

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

Eastern Division

In the Matter of

DAREN L. WAGNER and WAGNER CHARTER CO., INC.

v.

M/V JAMAICA, A. PAUL KNOTT, JR. and WAGNER CRUISES, LTD.

Case Number: 02C 5138

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

DAREN L. WAGNER, an individual, and WAGNER CHARTER CO., INC.

JUDGE SHADUR

MAGISTRATE JUDGE KE

| (A) | (B) |
|---|---|
| SIGNATURE [signature] | SIGNATURE [signature] |
| NAME MICHAEL A. SNYDER | NAME TIMOTHY S. MCGOVERN |
| FIRM CONKLIN, MURPHY, CONKLIN, & SNYDER | FIRM CONKLIN, MURPHY, CONKLIN & SNYDER |
| STREET ADDRESS 53 W. JACKSON BLVD., STE. 1150 | STREET ADDRESS 53 W. JACKSON BLVD., STE. 1150 |
| CITY/STATE/ZIP CHICAGO, IL 60604 | CITY/STATE/ZIP CHICAGO, IL 60604 |
| TELEPHONE NUMBER (312) 341-9500 | TELEPHONE NUMBER (312) 341-9500 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 2664542 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6275492 |
| MEMBER OF TRIAL BAR? YES ☑ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☑ |
| TRIAL ATTORNEY? YES ☑ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☑ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☑ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

DOCKETED JUL 2 2 2002

13

JS 44
(Rev 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

I. (a) PLAINTIFFS
DAREN L. WAGNER and WAGNER CHARTER CO., INC.

DEFENDANTS
M/V JAMAICA, A. PAUL KNOTT, JR., and WAGNER CRUISES, LTD.

(b) County of Residence of First Listed Plaintiff: COOK
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
MICHAEL A. SNYDER, TIMOTHY S. MCGOVERN
CONKLIN, MURPHY, CONKLIN & SNYDER, 53 W. JACKSON BLVD., STE. 1150, CHICAGO, IL 60604, (312) 341-9500

Attorneys (If Known)

02C 5138

JUDGE SHADUR

MAGISTRATE JUDGE KEYS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☑ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury—Med. Malpractice
- ☐ 365 Personal Injury—Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing / Accomodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

DOCKETED
JUL 2 2 2002

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

ARREST OF A VESSEL AND FORECLOSURE OF A PREFERRED SHIP MORTGAGE PURSUANT TO 46 U.S.C. 31325 AND RULES B, C AND E OF THE SUPPLEMENTAL RULES FOR CERTAIN ADMIRALTY AND MARITIME CLAIMS, FEDERAL RULES OF CIVIL PROCEDURE.

## VII. REQUESTED IN COMPLAINT

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 837,493.67

CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes ☑ No

## VIII. RELATED CASE(S) (See Instructions)

DATE: 7/19/02

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING ______ JUDGE ______ MAG. ______

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAREN L. WAGNER, an individual, and WAGNER CHARTER CO., INC., an Illinois corporation,

Plaintiffs,

v.

M/V *JAMAICA*, her engines, boilers, etc., *in rem*, A. PAUL KNOTT, JR., an individual, *in personam*, and WAGNER CRUISES, LTD., an Illinois corporation,

Defendants.

No. 02C 5138

JUDGE SHADUR

MAGISTRATE JUDGE KEYS

DOCKETED
JUL 2 2 2002

VERIFIED COMPLAINT

NOW COME the plaintiffs, DAREN L. WAGNER and WAGNER CHARTER CO., INC. ("Wagner Charter"), by their attorneys, Michael A. Snyder and Timothy S. McGovern, and for their complaint against the M/V *JAMAICA*, *in rem* (hereinafter "vessel"), A. PAUL KNOTT, JR., *in personam*, and WAGNER CRUISES, LTD. ("Wagner Cruises"), state as follows:

1. This is an admiralty and maritime claim for the foreclosure of a preferred ship mortgage relating to the conveyance of the vessel. This action also involves the breach of certain agreements entered into between the parties relating to the sale and operation of the vessel, as well as the business of the vessel. Jurisdiction is predicated upon Title 46 U.S.C §31325(c). This statute provides:

> "The district courts have original jurisdiction of a civil action brought under subsection (b)(1) or (2) of this section. However, for a documented vessel...this jurisdiction is exclusive of the

1-1

> courts of the States for a civil action brought under subsection (b)(1) of this section."

*In personam* jurisdiction is also appropriate pursuant to 46 U.S.C. §31325(b), which states:

> "On default of any term of the preferred mortgage, the mortgagee may -
>
> (1) enforce the preferred mortgage lien in a civil action in rem for a documented vessel, a vessel to be documented under chapter 121 of this title, a vessel titled in a State, or a foreign vessel;
>
> (2) enforce a claim for the outstanding indebtedness secured by the mortgaged vessel in -
>
> > (A) a civil action in personam in admiralty against the mortgagor, maker, comaker, or guarantor for the amount of the outstanding indebtedness or any deficiency in full payment of that indebtedness."

2. Jurisdiction is also predicated upon 28 U.S.C. §1333. The plaintiffs invoke Rule 9(h) of the Federal Rules of Civil Procedure and Rules B, C and E of the Supplemental Rules for Certain Admiralty and Maritime Claims.

3. Supplemental jurisdiction is appropriate pursuant to 28 U.S.C. §1367. All claims are derived from a common nucleus of operative fact, and would ordinarily be expected to be tried in the same judicial proceeding if considered without regard to their federal or state character.

4. Venue will be established once the vessel is seized within this district and the owner is served. Additionally, the vessel and Wagner Cruises transact business in the Northern District of Illinois. Upon information and belief, all parties reside in the Northern District of Illinois.

**COUNT I**
**(Arrest of vessel and foreclosure of preferred ship mortgage)**

5. The plaintiff, Daren L. Wagner, is an individual residing in the State of Illinois.

6. The plaintiff, Wagner Charter, is an Illinois corporation, with its principal place of business in the State of Illinois. Daren L. Wagner serves as president of Wagner Charter.

7. At all material times, the vessel was documented in the United States with the following particulars:

(a) Official number 507102;
(b) Length – 93.1 feet;
(c) Gross tonnage - 95; and,
(d) Home port – Chicago, Illinois.

The vessel is, or will be, within this district while this action is pending.

8. On July 5, 2001, Wagner Charter, Wagner Cruises, and A. Paul Knott, Jr., entered into a purchase agreement for the purchase and sale of certain assets, including the vessel ("Purchase Agreement"). A true and accurate copy of the Purchase Agreement is attached hereto as Exhibit A and made a part hereof. Pursuant to the terms and conditions of the Purchase Agreement, Wagner Cruises and A. Paul Knott, Jr. agreed to pay Wagner Charter total consideration of $450,000.00.

9. On July 5, 2001, A. Paul Knott, Jr., Wagner Cruises, and Daren L. Wagner entered into a consulting agreement, whereby Wagner Cruises and A. Paul Knott, Jr. engaged the services of Daren L. Wagner on the terms and conditions

provided therein ("Consulting Agreement"). A true and accurate copy of the Consulting Agreement is attached hereto as Exhibit B and made a part hereof. Pursuant to the terms of the Consulting Agreement, A. Paul Knott, Jr. and Wagner Cruises agreed to pay Daren L. Wagner $350,000.00.

10. On July 5, 2001, A. Paul Knott, Jr., Wagner Cruises, and Daren L. Wagner entered into a non-compete agreement, whereby Daren L. Wagner agreed to certain restrictions on her future business activities on the terms and conditions provided therein ("Non-Compete Agreement"). A true and accurate copy of the Non-Compete Agreement is attached hereto as Exhibit C and made a part hereof. Pursuant to the terms of the Non-Compete Agreement, A. Paul Knott, Jr. and Wagner Cruises agreed to pay Daren L. Wagner $350,000.00.

11. On August 28, 2001, Wagner Cruises, as debtor, granted a security interest in favor of Wagner Charter in connection with the Purchase Agreement, evidenced by a security agreement ("PA Security Agreement"). A true and accurate copy of the PA Security Agreement is attached hereto as Exhibit D and made a part hereof. Collateral for the PA Security Agreement includes, but is not limited to, "[a]ll vessels owned or hereafter acquired by Debtor, including all masts, boilers, etc."

12. On August 28, 2001, Wagner Cruises, as debtor, granted a security interest in favor of Daren Wagner in connection with the Consulting Agreement and Non-Compete Agreement, evidenced by a security agreement ("C/NC Security Agreement"). A true and accurate copy of the C/NC Security Agreement is attached

hereto as Exhibit E and made a part hereof. Collateral for the C/NC Security Agreement includes, but is not limited to, "[a]ll vessels owned or hereafter acquired by Debtor, including all masts, boilers, etc."

13. On August 28, 2001, defendant Wagner Cruises granted a preferred ship mortgage in favor of plaintiffs, Wagner Charter and Daren L. Wagner, in the amount of $1,150,000.00, a copy of which is attached hereto as Exhibit F and made a part hereof ("Preferred Ship Mortgage"). The Preferred Ship Mortgage was registered with the National Vessel Documentation Center of the United States on September 5, 2001, as indicated on page 1 of Exhibit F.

14. The Preferred Ship Mortgage secured the "payment and performance of all other indebtedness, obligations and liabilities...howsoever created, arising or evidenced, and whether now existing or hereafter arising...."

15. The vessel is now indebted to the plaintiffs in the amount of $837,493.67 plus interest, the costs of this action, including attorneys' fees, and will become indebted to the plaintiffs for all of the vessel's expenses incurred in *custodia legis*.

16. The value of the vessel is approximately $650,000.00.

WHEREFORE, plaintiffs pray that an Order issue as follows:

(a) That a warrant for the arrest of the vessel be issued forthwith;

(b) That the vessel be seized when found within this district in accordance with the provisions of Rules C and E of the Supplemental Rules for Certain Admiralty and Maritime Claims, F.R.Civ.P;

(c) That the vessel not be released until a bond in the amount of $850,000.00 is posted with the Clerk of the United States District Court for the Northern District of Illinois to secure payment of the vessel's and the Marshal's custodial fees and insurance, and the plaintiff's attorney's fees;

(d) That the Preferred Ship Mortgage be foreclosed; and

(e) That judgment be entered against the vessel in the amount of such debt, attorney's fees, Marshal's fees, and court costs as shall be proved at the trial hereof.

**COUNT II**
**(Breach of the Purchase Agreement)**

17. The plaintiffs repeat and reallege the allegations of paragraphs 1 through 16 of their complaint as paragraphs 1 through 16 of Count II.

18. At all material times, the defendants, Wagner Cruises and A. Paul Knott, Jr., were bound by the terms and conditions of the Purchase Agreement for the purchase of "certain assets related to the motor vessels and operation of said motor vessels".

19. Pursuant to paragraph 4 of the Purchase Agreement, Wagner Cruises and A. Paul Knott, Jr. were to pay plaintiff, Wagner Charter, "$25,000 per year in 5 payments of $5,000 each, due on the first of June, July, August, September and October," beginning in the year 2002.

20. In an "Addendum to Sales Contract between Wagner Charter Company, Inc. ("Seller") Wagner Cruises Ltd. and A. Paul Knott (collectively the "Buyer")" dated August 27, 2001 ("Addendum"), a copy of which is appended to the Purchase Agreement, Wagner Cruises and A. Paul Knott, Jr. agreed to "pay off the

balance of the purchase price of $450,000, minus agreed to offsets, by March 1st, 2002."

21. For purposes of the Purchase Agreement, Wagner Cruises and A. Paul Knott, Jr. were the "Buyers," as that terms is defined therein, and Wagner Charter was the "Seller," as that term is defined therein. Pursuant to paragraph 11 of the Purchase Agreement:

> "Each of the following acts, occurrences and omissions shall constitute a 'default' under this Agreement:
>
> a. Failure of Buyer to make any payment required under the Agreement when due and such payment remains unpaid for ten (30) [sic] days; or
>
> b. Either party materially defaults in the performance or observance of any term, covenant, condition or agreement on its' [sic] part to be performed or observed under this Agreement or any other agreement, document or instrument relating to or contemplated by this Agreement.
>
> Upon default, Seller may accelerate all payments due and owing under this agreement...Buyer agrees to pay all reasonable costs and expenses of collection including reasonable attorney's fees."

22. To date, plaintiffs have only received compensation in the amount of $290,506.33, accounting for certain payments and offsets. The outstanding balance due and owing to plaintiffs from defendants pursuant to the Purchase Agreement, and the Addendum thereto, is $159,493.67, plus interest, costs and attorneys' fees.

WHEREFORE, plaintiffs pray that, pursuant to the Purchase Agreement, judgment be entered in their favor and against the defendants, Wagner Cruises and A. Paul Knott, Jr., jointly and severally, in the amount of $159,493.67, plus interest, costs, and attorneys' fees.

**COUNT III**
**(Breach of the Consulting Agreement)**

23. The plaintiffs repeat and reallege the allegations of paragraphs 1 through 22 of their complaint as paragraphs 1 through 22 of Count III.

24. At all material times, the defendants, Wagner Cruises and A. Paul Knott, Jr. were bound by the terms and conditions of the Consulting Agreement with Daren L. Wagner.

25. Pursuant to paragraph 5 of the Consulting Agreement, defendants Wagner Cruises and A. Paul Knott, Jr. agreed to pay Daren L. Wagner a total of $350,000.00, financed over ten years. Payments of $11,000 per month were to be made on the first of the month between August and November of 2001, and then continuing "payments of $11,000.00, principal and interest will be paid on the first of each month June through October for the years 2002 through 2010." A final payment of $11,000 is to be paid on June 1, 2011.

26. Pursuant to paragraph 6 of the Consulting Agreement, Daren L. Wagner could only be terminated as a consultant for legally proven cause. "Cause," as defined in the Consulting Agreement:

> "...shall only include the following:
> a. Theft by Wagner of Cruises funds or property; or
> b. Entering into a similar Consulting Agreement with a competitive charter boat company operating vessels in Cook County, Illinois."

Daren L. Wagner has not stolen funds or property of Wagner Cruises, nor has she entered into a similar consulting agreement with a competitive charter boat company operating vessels in Cook County, Illinois.

27. For purposes of the Consulting Agreement, Wagner Cruises is referred to as "Cruises," A. Paul Knott, Jr. is referred to as "Knott," and Daren L. Wagner is referred to as "Wagner." Pursuant to paragraph 10 of the Consulting Agreement:

> "Default
>
> If Cruises and/or Knott default on the payment of any sums due and owing pursuant to Paragraph 5 of this Agreement, and such default remains uncured after five business days, Wagner may accelerate all payments due and owing under this Agreement...Cruises and Knott waive any and all defenses to any lawsuit filed as a result of the breach of this Agreement by Cruises and Knott. Cruises and Knott agree to pay all reasonable costs and expenses of collection including reasonable attorney's fees."

28. Pursuant to the Consulting Agreement, plaintiff, Daren L. Wagner, has received only one payment of $11,000.

29. The outstanding balance due and owing to Daren L. Wagner from defendants pursuant to the Consulting Agreement is $339,000.00 plus interest, costs and attorneys' fees.

WHEREFORE, plaintiff, Daren L. Wagner, prays that, pursuant to the Consulting Agreement, judgment be entered in her favor and against the defendants, Wagner Cruises and A. Paul Knott, Jr., jointly and severally, in the amount of $339,000, plus interest, costs, and attorneys fees.

## COUNT IV
## (Breach of the Non-Compete Agreement)

30. The plaintiffs repeat and reallege the allegations of paragraphs 1 through 29 of their complaint as paragraphs 1 through 29 of Count IV.

31.    At all material times, Daren L. Wagner, and the defendants, Wagner Cruises and A. Paul Knott, Jr., were bound by the terms and conditions of the Non-Compete Agreement.

32.    Pursuant to paragraph 4 of the Non-Compete Agreement, defendants Wagner Cruises and A. Paul Knott, Jr. agreed to pay Daren L. Wagner a total of $350,000.00, financed over ten years.  Payments of $11,000 per month were to be made on the first of the month between August and November of 2001, and then continuing "payments of $11,000.00, principal and interest will be paid on the first of each month June through October for the years 2002 through 2010."  A final payment of $9,960.00 is to be paid on June 1, 2011.

33.    For purposes of the Non-Compete Agreement, Wagner Cruises is referred to as "Cruises," A. Paul Knott, Jr. is referred to as "Knott," and Daren L. Wagner is referred to as "Wagner."  Pursuant to paragraph 10 of the Consulting Agreement:

> "Default
>
> If Cruises and/or Knott default on the payment of any sums due and owing pursuant to Paragraph 4 of this Agreement, and such default remains uncured after five business days, Wagner may accelerate all payments due and owing under this Agreement...Cruises and Knott waive any and all defenses to any lawsuit filed as a result of the breach of this Agreement by Cruises and Knott.   Cruises and Knott agree to pay all reasonable costs and expenses of collection including reasonable attorney's fees."

34.    Pursuant to the Non-Compete Agreement, plaintiff, Daren L. Wagner, has received only one payment of $11,000.

35. The outstanding balance due and owing to Daren L. Wagner from defendants pursuant to the Non-Compete Agreement is $339,000.00, plus interest, costs and attorneys' fees.

WHEREFORE, plaintiff, Daren L. Wagner, prays that, pursuant to the Non-Compete Agreement, judgment be entered in her favor and against the defendants, Wagner Cruises and A. Paul Knott, Jr., jointly and severally, in the amount of $339,000, plus interest, costs, and attorneys' fees.

Respectfully submitted,

DAREN L. WAGNER and WAGNER CHARTER CO., INC., plaintiffs,

By: Timothy S. McGovern
Their attorney

Michael A. Snyder
Timothy S. McGovern
CONKLIN, MURPHY, CONKLIN & SNYDER
53 West Jackson Boulevard
Suite 1150
Chicago, Illinois 60604
Tel.: (312) 341-9500
Fax: (312) 341-9151

STATE OF ILLINOIS )
) ss.
COUNTY OF COOK )

**AFFIDAVIT**

I, Daren L. Wagner, individually and as President of Wagner Charter Co., Inc., have read the foregoing complaint. I have personal knowledge of the facts stated therein, and hereby depose and swear, under penalties of perjury, that they are true and correct to the best of my knowledge and belief.

Daren L. Wagner

Subscribed and sworn to before me this 19 day of July, 2002.

Notary Public

OFFICIAL SEAL
SUZETTE A. NOWAK
Notary Public, State of Illinois
My Commission Expires 7-13-2004

PLAINTIFF'S
EXHIBIT
A

## PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT ("Agreement") is made as of the 5 day of July, 2001, by and between WAGNER CHARTER CO., INC., ("Seller") and WAGNER CRUISES, LTD. and A. PAUL KNOTT (collectively the "Buyer").

## RECITALS

A. The Seller is the owner of two motor vessels and associated equipment.

B. The Seller wishes to sell and the Buyer wishes to purchase certain assets related to the motor vessels and operation of said motor vessels pursuant to the terms of this Agreement.

C. Closing will occur on July 10, 2001 or such other date mutually agreed to by the parties.

## AGREEMENT

NOW, THEREFORE, in consideration of the premises and for the good and valuable consideration, receipt of which is hereby acknowledged, the Seller and the Buyer hereby agree as follows:

1. Subject to the terms and conditions of this Agreement, the Seller agrees to sell and the Buyer agrees to buy from the Seller the motor vessel *Jamaica*, the motor vessel *Buccaneer*, the equipment listed in Schedule 1 ("Equipment"), existing contracts listed in Schedule 2 ("Contracts") and miscellaneous assets described on Schedule 3 which Schedules are attached hereto and made a part of this Agreement. The above listed assets and Schedule are sometimes referred to in this Agreement collectively as the "Purchased Assets".

2. In consideration for the sale of the Purchased Assets by the Seller to the Buyer, the Buyer shall pay to the Seller the sum of $450,000.00, in a combination of immediate cash payoff of Seller loans, Seller debt to Buyer, repair offsets, debt assumption and cash payments set forth as follows. Under no circumstances will the total payoff of loans, Seller debt to Buyer, repair offsets or accounts payable assumed by Buyer total more than the purchase price of $450,000.00. Any remaining monies due from the purchase price will be financed by the Seller as described in 4.

a. At closing Buyer will pay in cash an amount sufficient to retire the loans listed below. The approximate amount of each loan is a follows:

1) North Community Bank loan number 48401 - $50,090.95;
2) North Community Bank loan number 17565 - $5,312.91;
3) Richard Kingma loan - $20,286.00;
4) Richard Kingma loan - $10,110.00;
~~5) Daren Wagner loan - $23,000.00~~
6) Jerry Barr loan - $10,354.15;
7) Jerry Barr loan of $10,233.35; and
8) *Jamaica* dry dock costs unless paid previously by the Seller.

The amount of cash due under this subsection at closing may not be reduced by the offsets listed in subsections 2.b - 2.d.

b. At closing the Buyer may offset the following Seller expenses Buyer has previously paid for Seller:

1) Dock expenses for *Buccaneer* and *Jamaica*, previously paid by the Buyer, prorated to date of closing, as follows: ~~$1,162.50 per month beginning May 1st, 2001~~ #787.50 May-July 2001 for 330 North Wabash and ~~$1,100.00 per month~~ for Burnham Harbor ~~beginning June 1st, 2001.~~ 7100 - May-July 2001

2) Money due to Luxury Yachts, Ltd. for cruises transferred from WCCI vessels to Luxury Yachts, Ltd. vessels.

c. Repair and licensing costs may be offset by the Buyer from the purchase price during 2001 and 2002 as follows:

1) Actual incurred by Buyer to bring both vessels up to Coast Guard required minimum standards for annual (2001 only) Safety Inspection on each vessel;

2) Actual incurred by Buyer to bring *Buccaneer* up to Coast Guard required minimum standards for 5-year dry dock inspection;

3) Actual incurred by Buyer to bring *Buccaneer* starboard engine up to normal operating condition considering the type and age of the engine, not to exceed $20,000; and

4) Actual incurred by Buyer to replace backup generator on *Buccaneer*, not to exceed $~~7~~,000. 10,000

In the event the Buyer and Seller cannot agree on the costs incurred by Buyer in Paragraph 2.c., Buyer agrees to allow Seller access to the vessels by a surveyor of Seller's choice to examine the vessels. Buyer and Seller also agree to submit any dispute to binding arbitration to determine the costs incurred by Buyer in Paragraph 2.c. The cost of binding arbitration will be split between Buyer and Seller.

Buyer accepts vessells as is, where is, except that seller agrees to offset any unknown pre-existing conditions up to $10,000 total cost

d. Certain accounts payable will be assumed by the Buyer, for which a list will be provided at closing and may be added to from time to time. any state city or federal taxe

i) Buyer is not responsible for ~~taxes owed to~~ incurred by the seller

~~1) Buyer agrees to pay all tax debt first;~~

2) Buyer agrees to provide Seller with proof of payment in the form of a canceled check or signed release of debt in order to offset any cash payments as outlined in 3; and

3) If either the Buyer or the Seller effects a reduction in debt owed, the savings in debt belong to the party (Buyer or Seller) that negotiated the debt reduction.

4) Seller reserves the right to pay any account payable notwithstanding the account payable being on the list if said account payable has not been paid by Buyer.

3. As further consideration, the Buyer agrees to allow the Seller to use the afore mentioned dock space until the closing, and to rent such space at Buyer's actual cost to the Seller should the closing not occur.

4. The balance of purchase price due to Seller will be paid by Buyer beginning in year 2002. $25.000.00 per year in 5 payments of $5.000.00 each. due on the first of June. July. August. September and October until such time as purchase price is paid in full. These payments may be offset by any assumed accounts payable debt previously paid by the Buyer. up to the full payment due to Seller. Any payment required to be made pursuant to this Agreement not paid within 10 days of the applicable due date shall be assessed a late charge ("Late Charge") equal to the lesser of (a) 5% of such overdue amount or (b) the maximum amount permitted by law. Any Late Charge shall be payable by Buyer to Seller on demand made by Seller to Buyer. Seller also agrees to repay Daren Wagner her loan of $23,000 by July 1, 2002. Subject to the terms of this paragraph. the Buyer may from time to time. upon at least 10 days prior written notice received by Seller. prepay all sums due under this Agreement in whole or in part: provided. however: that any partial prepayment shall be: (i) applied to the unpaid installments thereof in the inverse order of maturity: and (ii) shall be accompanied by accrued interest to the date of prepayment on the principal amount being prepaid.

5. As security for this Agreement. Buyer grants Seller a security interest in the Purchased Assets. No Security Interests or liens. except that of the Seller. shall be placed or caused to be placed on the vessel *Jamaica* until such time as the debt to the Seller is paid in full. The Seller agrees to allow Shore Bank a superior security position to the Seller's interest up to $200.000.00 on the vessel *Buccaneer*. and the Seller agrees to assume a secondary security position. At any time. upon request of the Seller. the Buyer will promptly. at Buyer's expense. (a) correct any defect. error or omission which may be discovered in the form or content of any mortgage. security agreement. UCC-1 financing statement. assignments. certificates. correspondence and other documents delivered herewith. and (b) make. execute and deliver any and all mortgages. security agreements. financing statements. assignments. certificates. correspondence and other documents as may. in the good faith opinion of the Seller. be necessary or desirable in order to complete or effect the granting of a security interest in the Purshased Assets.

6. Closing on the purchase of the Purchased Assets (the "Closing") shall take place on July 12. 2001 or sooner at the offices of the Seller or any other such place the Buyer and Seller may agree.

7. On the closing date the Seller shall deliver to the Buyer:

a. A valid Bill of Sale and /or Assignment covering the Purchased Assets: and
b. All assets listed as part of sales contract.

8. On the closing date the Buyer shall deliver to the Seller:

a. The initial payment of the purchase price as outlined in Paragraph 2(a):
b. A boat mortgage for each vessel for the balance of the purchase price:
c. A Security Agreement and UCC-1 financing statement covering all of the purchased assets not covered by the boat mortgages: and
d. A corporate resolution by Wagner Cruises Ltd. authorizing the purchase of the

assets under the terms set forth in this agreement.

9. Seller represents and warrants, and shall be deemed to represent and warrant at the time of Closing, to the Buyer as follows:

a. The Seller is a corporation, duly organized and existing, in good standing, under the laws of the jurisdiction of its incorporation, and has the corporate power to own its property and the purchased assets:

b. The Seller has full power and authority to enter into and to perform its obligations under this agreement, all of which have been duly authorized by all proper and necessary corporate action. No additional approval of shareholders of, or lenders to, the Seller and no consent, approval, filing or registration with or notice to any governmental authority on the part of the Seller is required as a condition to the validity of this Agreement or the performance by the Seller of it's obligation under the Agreement:

c. This Agreement constitutes the valid and legally binding agreement of the Seller and is enforceable against the Seller in accordance with it's terms:

d. There is no statute, regulation, rule order or judgment, no charter, bylaw or preference stock provision of the Seller, and no provision of any mortgage, indenture, security agreement, contract or other agreement binding on the Seller or affecting it's properties, which would prohibit or cause default under or in any way prevent the execution, delivery, or carrying out of the terms of this Agreement.

e. That Seller will enforce the non-compete agreement and/or order of non-complete in place against Kenneth R. Wagner provided that Buyer pays all fees and costs of litigation to enforce said non-compete agreement and/or order.

f. All representations and warrantees contained in this agreement shall survive the execution of this Agreement and Closing.

10. Buyer represents and warrants, and shall be deemed to represent and warrant at the time of Closing, to the Buyer as follows:

a. The Buyer is a corporation, duly organized and existing, in good standing, under the laws of the jurisdiction of its incorporation, and has the corporate power to own its property and the purchased assets:

b. The Buyer has full power and authority to enter into and to perform its obligations under this agreement, all of which have been duly authorized by all proper and necessary corporate action. No additional approval of shareholders of, or lenders to, the Buyer and no consent, approval, filing or registration with or notice to any governmental authority on the part of the Buyer is required as a condition to the validity of this Agreement or the performance by the Buyer of it's obligation under the Agreement:

c. This Agreement constitutes the valid and legally binding agreement of the Buyer and is enforceable against the Buyer in accordance with it's terms:

d. There is no statute, regulation, rule order or judgment, no charter, bylaw or preference stock provision of the Buyer, and no provision of any mortgage, indenture, security agreement, contract or other agreement binding on the Buyer or affecting it's properties, which would prohibit or cause default under or in any way prevent the execution, delivery, or carrying out of the

terms of this Agreement:

e. All representations and warrantees contained in this agreement shall survive the execution of this Agreement and Closing;

f. Buyer has examined the Purchased Assets and accepts the Purchased Assets "as is, where is":

g. Buyer, until such time that the Purchase Price is paid in full, will maintain all services and facilities necessary to the ongoing business and maintenance of the motor vessels *Buccaneer* and *Jamaica*.

11. Each of the following acts, occurrences and omissions shall constitute a "default" under this Agreement:

a. Failure of Buyer to make any payment required under the Agreement when due and such payment remains unpaid for ten (10) days: or

b. Either party materially defaults in the performance or observance of any term, covenant, condition or agreement on its' part to be performed or observed under this Agreement or any other agreement, document or instrument relating to or contemplated by this Agreement.

Upon default, Seller may accelerate all payments due and owing under this Agreement. Buyer agrees to submit to the jurisdiction of the Circuit Court of Cook County, Illinois and waives any and all right to a trial by jury. Buyer waives any and all defenses to any lawsuit filed as a result of the breach of this Agreement by Buyer. Buyer agrees to pay all reasonable costs and expenses of collection including reasonable attorney's fees.

12. At any time, upon request of the Buyer, the Seller will promptly, at Seller's expense, (a) correct any defect, error or omission which may be discovered in the form or content of any bill of sale, assignments, certificates, correspondence and other documents delivered herewith, and (b) make, execute and deliver any and all further bills of sale, assignments, certificates, correspondence and other documents as may, in the good faith opinion of the Buyer, be necessary or desirable in order to complete or effect the transfer of the Purchased Assets.

13. Except as otherwise provided herein, any fee, cost, charge or expense incurred by either party hereto or for which either party hereto may be liable in connection with the negotiation, examination and consummation of this Agreement, shall be paid by the party incurring or liable for such fee. All bills rendered for services should be on hand as of the date of Closing.

14. The Buyer and the Seller each warrant to the other that they did not deal with any broker or finder in connection with the transaction described in this Agreement.

15. This Agreement and all exhibits referred to herein and attached embody and constitute the entire understanding between the parties with respect to the transaction contemplated herein, and all prior or contemporaneous agreements, understandings, representations and statements, oral or written, relating to the purchase of the Purchased Assets are merged into this Agreement. Neither this Agreement nor any provision hereof may be waived, modified, amended, discharged, or

terminated except by an instrument in writing signed by the parties hereto: provided, however, either party may waive in writing a requirement of the other.

16. Any notice, request, demand, instruction or other document to be given or served hereunder or under any document or instrument executed pursuant hereto shall be in writing and shall be delivered personally or sent by United States registered or certified mail, return receipt requested, postage prepaid or by overnight express courier, postage prepaid and addressed to the parties at their respective addresses set forth below, and the same shall be effective upon receipt if delivered personally or two business days after deposit in the mails if mailed. A party may change its address for receipt of notices by service of a notice of such change in accordance herewith.

If to Seller to:

Daren Wagner
WAGNER CHARTER CO., INC.
2N076 Linda Avenue
Wheaton, Illinois 60188

With a copy to:

David E. Cohen
David E. Cohen, P.C.
205 West Wacker Drive
Suite 2333
Chicago, Illinois 60606

If to Buyer, to:

A. Paul Knott, Jr.
1501 North State Parkway
Suite 3A
Chicago, Illinois 60610-1665

WAGNER ~~CHARTER~~ CRUISES, LTD. w/ APK
~~1501 North State Parkway~~ 500 S Wells
~~Suite 3A~~ Suite 532
Chicago, Illinois ~~60610-1665~~ 60607

With a copy to:

D. Adolphus Rivers
6947 Cregier Avenue
Chicago, Illinois 60649

17. This Agreement has been delivered at Chicago, Illinois, and shall be governed by the

laws of the State of Illinois. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision, or the remaining provisions of this Agreement, or any other agreement between Buyer and Seller.

18. This Agreement may be signed in counterparts.

19. This Agreement shall be binding upon and shall inure to the benefits of the parties hereto and to their respective successors and assigns.

WAGNER CHARTER CO., INC.

By: ______________________
Its President

______________________
A. PAUL KNOTT, JR.

DBA
WAGNER CRUISES LTD.

By: ______________________
Its President

**Schedule 1**

1. For the motor vessel *Jamaica*, all cables, engines, machinery, boats anchors, chains, apparel, furniture, fittings, tools, pumps, equipment, radar, sonar, navigational devices, and supplies, all accessories and additions, improvements and replacements whether on board or removed.

2. For the motor vessel *Buccaneer*, all cables, engines, machinery, bowsprits, boats anchors, chains, apparel, furniture, fittings, tools, pumps, equipment, radar, sonar, navigational devices, and supplies, all accessories and additions, improvements and replacements whether on board or removed.

3. Cleaning items including vacuum cleaner, steam cleaner and power washer.

4. Tools including assorted power tools and hand tools.

**Schedule 2**

# July 2001

July 2001

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

August 2001

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| July 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 12:00pm Bahna...pass.ct. 15 Estimated...Beer and Wine Open<br>11:00pm Mohanty...pass.c 125 Estimated...Beer | 12:00am Mohanty...pass.c 125 Estimated...Beer and Wine, Soda and Juice for underage passengers | 7:30pm Independence Day Cruise...pass.ct: 220 Estimated...Stanc | | | | 7:00pm Clay...pass.ct. 91...Beer and Wine Open Bar(ONLY 2 HOURS) and Cash Bar (Buccaneer) |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| | | 2:00pm Saldivar...pass.ct 80 Estimated...Stanc Open Bar | 12:00pm Renee Brown/Manuf.Hoi 65...Beer and Wine Open Bar | 7:00pm Werner/NW Univ...pass.ct. 60 Estimated...Beer and Wine Open Bar (Buccaneer ) | | 9:30am Goldstein...pass.( 50 Estimated...Cash<br>7:00pm Donovan...pass.c 150<br>7:30pm Get Away With Murder (Private) |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 1:00pm Get Away With Murder (Buccaneer) | 1:00pm Goleash / United Center...pass.ct:9 Beer and Wine Bar (Jamlaca) | | 11:00am Russo...pass.ct:1 Estimated...Open Pop and Juice<br>6:00pm Kasch...pass.ct: 125...Standard<br>7:00pm Ostergard...pass. 60 | 5:00pm Hotel Human Resources/Soude PACKAGE | 1:00pm Schulmeister/Foll Corp...pass.ct.:6! Estimated...Pop<br>7:00pm McGhee...pass.ct 120<br>7:30pm Paul Williams...pass.ct | 11:00am Harrington (Jamaica)<br>6:00pm Darby (Buccaneer)<br>7:00pm Roper...Pass.ct: 215 Estimated...Delu |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 12:00am Roper...Pass.ct: 215 Estimated...Delu Open Bar<br>2:00pm Shierry...pass.ct: 100 Estimated...Beer | | | 5:00pm IL Paralegal/Olson.. 150 Estimated...Cash<br>8:30pm Dahlke...pass.ct:: Estimated...Delu Open Bar/Pop | 3:00pm Cassidy...pass.ct: 65 Estimated...Cash bar( 1 beer and wine ticket per passenger) (Buccaneer ) | 12:00pm Shaw (Jamaica)<br>6:00pm Kuziel/Taylor, Johnson and Assoc...pass.ct:6( Estimated...Beer<br>8:00pm Mountain (Jamaica) | 12:00pm Walace/CADDI Inc...pass.ct: 60<br>2:30pm Ramze Dahleh/Hyperfee<br>7:30pm Flynn(VN) (Jamiaca)<br>7:30pm Gamino(VN) |
| 29 | 30 | 31 | | | | |
| | | | | | | |

# August 2001

August 2001

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

September 2001

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| | | | August 1 | 2<br>1:00pm Federal Reserve/Lux...pa: (Jamiaca) | 3<br>2:30pm Lattanzio/NACM.. Estimated...Beer and Wine Open<br>7:00pm Get Away With Murder...pass.ct:<br>7:30pm Prom.Adv...pass., Estimated...Cash | 4<br>8:00pm Gustafson...UKNC (Jamiaca) |
| 5 | 6 | 7<br>10:30am Brim(PAC)...No Contract (Buccaneer) | 8<br>6:00pm Smith/MidAmeric Elevator Comp...pass.ct:1' Estimated...Stanc Open Bar, Open Soda and Juice for underage | 9<br>3:00pm Donnelly...pass.c 35 Estimated...Beer and Wine Open<br>7:00pm Hernandez...pass 150 Estimated...Pop | 10<br>5:00pm Falls...pass.ct: 50 Estimated...Beer and Wine Open Bar (Jamiaca) | 11<br>10:00am Martino...pass.ct: Unknown...Cash Bar (Buccaneer)<br>7:00pm Cosentino...pass. 130<br>7:00pm Randall/Centex Homes...pass.ct: |
| 12<br>1:00am Golubchekn(SATL NIGHT-SUNDAY MORNING)...COI (Jamiaca) | 13 | 14 | 15<br>12:45pm Galetano/Heitmai Financial...pass.c 115 Estimated...Stanc Open Bar | 16<br>5:00pm Henderson...pass 125 Estimated...Tab<br>6:00pm Rubinstein...pass 100 Estimated...Beer and Wine Open | 17<br>1:00pm Carroll/Ernst and Young...pass.ct:<br>2:00pm Jack Wilson/ Equity Res. P<br>6:30pm Brian Malone/Chi.<br>8:00pm Zander...pass.ct: | 18<br>12:00pm Belsher/Travel Alberta...pass.ct:<br>6:30pm Grabowski...pass 125<br>7:00pm Lubavs...pass.ct: 80<br>7:00pm Sobek/S.Holland |
| 19<br>12:00pm Air and Water Show...pass.ct: 145 Estimated..<br>12:00pm Graham/Scot, Inc...pass.ct:<br>6:00pm Hall...NO CONTRACT | 20 | 21 | 22 | 23<br>6:30pm Steven...pass.ct: 101 Estimated...Beer and Wine Open Bar (Buccaneer) | 24<br>7:00pm McGinnis...NO CONTRACT (Jamiaca)<br>8:00pm Miller...pass.ct: 100 Estimated...Stanc Open Bar | 25<br>4:00pm Prom.Adv...pass., 150 Estimated...Cash Bar + 2 drink<br>8:00pm Nagel...pass.ct: 215 Estimated...Beer |
| 26<br>2:00pm Rose/Ginger's Ale House...pass.ct: 75 Estimated...NO CONTRACT (Buccaneer ) | 27 | 28 | 29<br>8:00pm Tarka...pass.ct: 100 Estimated...Cash Bar (Buccaneer) | 30<br>7:00pm Inst. of Art (Lindsey)...pass.c 215 Estimated...Open Soda and Juice (Jamaica) | 31<br>9:00pm Promotional Advertising...NO CONTRACT (Jamiaca) | |

# September 2001

September 2001

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

October 2001

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| | | | | | | September 1 |
| | | | | | | 2:00pm Wilford...pass.ct: 75 Estimated...Beer and Wine Open<br>7:00pm Volpe...Contract? (Jamiaca) |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 11:00am Michaels...pass.cl 125 Estimated...Pop<br>6:30pm Get Away With Murder (Buccaneer ) | | | | | 6:00pm Kosmieja/Larson Envelope Comp...pass.ct:1 Estimated...Stanc Open Bar | 1:00pm Robert Hubener...pass.cl Estimated...Cash<br>7:00pm Jezek/Judson College...pass.ct: and Juice Open |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 12:30pm Culver/Ind. Order of Foresters...pas.cl<br>5:30pm Culver/Ind. Order of Foresters (J | | | | | | 7:00pm Mortenson (A.G.L.O)...pass.( 125 Estimated...Cash Bar (Jamaica) |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 5:30pm Krysa/Ind. Order of Foresters...pass.( 100...Cash Bar (Jamiaca) | | | | | | 12:30pm SANDA Events...pass.ct: 155<br>6:30pm Messina...pass.ct 151 Estimated...Delu |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 12:00pm Fisher/Medina Temple...pass.ct:<br>12:00pm Frederick Fisher...MAXINE<br>2:00pm Diversion (Buccaneer) | | | | | | 6:00pm Yates\Painter...pa 50 Estimated...Delu |
| 30 | | | | | | |
| | | | | | | |

# October 2001

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

November 2001

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| | October 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13<br>2:00pm Yale Club (Jamiaca)<br>7:00pm Get Away With Murder (Jamiaca) |
| 14 | 15 | 16 | 17 | 18 | 19 | 20<br>6:00pm Schuitman (Jamiaca) |
| 21 | 22 | 23 | 24 | 25 | 26<br>7:00pm Friends of the Chicago River / Margaret Frisby (Jamiaca) | 27 |
| 28 | 29 | 30 | 31<br>6:30pm Get Away With Murder (Jamiaca) | | | |

# November 2001

November 2001

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

December 2001

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| | | | | November 1 | 2 | 3<br>7:00pm Pine (Jamiaca) |
| 4 | 5 | 6 | 7 | 8 | 9 | 10<br>7:00pm Get Away With Murder (Jamiaca) |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

# December 2001

December 2001

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

January 2002

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| | | | | | | December 1 |
| 2 | 3 | 4 | 5 | 6 | 7<br>7:00pm Get Away With Murder (Jamiaca) | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

## Schedule 3

1.   Web Site for *Jamaica* and *Buccaneer*

2.   Main telephone number of 630-653-8690

3.   Toll free number of 800-PARTY Boat

4.   One computer ("Katies")

5.   One printer

6.   Three Nortel phones.

7.   Two metal desks

8.   Two office chairs.

9.   Copy machine

10.  Fax machine

**ACCOUNTS PAYABLE - WAGNE[illegible] CHARTER COMPANY** [illegible]epared 7/7/01

| Venders and Suppliers: | | | Total due | |
|---|---|---|---|---|
| 1/12/01 | Airborn Express | (Delivery) | 58.58 | |
| 2/01 | Ameritech | Phone & Y.P. | 12006.43 | |
| 5/25/01 | Barclay | R & M | 15.89 | |
| ??? | Cell Mart | Cell Phone | 188.48 | |
| 4/1/01 | Chicago Parent | Advertising | 1916.00 | |
| 3/01/01 | Chicago Tribune | Help wanted | 822.50 | |
| 5/1/01 | City of Chicago | Licence Fees | 700.00 | |
| 6/1/01 | Cohen, David | Legal | 1740.55 | |
| 11/10/00 | Corky's Catering | Catering | 3671.87 | (2000.00 settle if paid by now) |
| 11/3/00 | Cosmopolitan Textiles | Linen Rental | 558.58 | |
| 10/01/00 | Crowleys | Boat Yard | 2013.00 | |
| 7/1/01 | Dept. of Treasury | Retail stamp | 250.00 | |
| 9/15/00 | Dominics | Food | 153.72 | |
| 5/16/01 | Drug testing Consult | Drug test | 573.00 | |
| 4/9/01 | Dukes Oil | Waste oil | 2011.25 | |
| 2/14/01 | Fed Ex | Delivery | 250.02 | |
| 7/7/01 | First Insurance | Hull, etc. | 2779.00 | |
| 5/14/01 | Grainger | R & M | 169.26 | |
| 12/14/00 | Home Depo | Repair and maint. | 1265.54 | (640.21 settle if paid by 7/14/01) |
| 12/29/00 | Illinois Trade | Various | 380.83 | |
| 5/7/01 | Industrial Engine | Buc Repair | 2508.15 | |
| 3/15/01 | Key Art | Dir. Of Op Ad | 145.00 | |
| 6/11/01 | MCI | City phone | 14.62 | |
| 6/3/01 | NOS | Phone | 659.03 | |
| 12/12/01 | Office Max | Office Supplies | 107.62 | |
| 1/12/01 | PBCC | Equip rental | 450.93 | |
| 5/4/01 | Pitney Bowes | supplies | 62.26 | |
| 6/26/01 | Romano Brothers | liquore | 1266.50 | |
| 5/30/01 | S-K Assoc. | Financial | 4280.01 | |
| 11/7/00 | Sparkling Spring | Bottled water | 117.72 | |
| 5/20/01 | Sun - Times | Help Wanted | 780.00 | |
| 5/8/01 | Swanel | Pop | 536.03 | |
| 5/1/01 | Tandem | Laborers (4 wks) | 9045.88 | |
| 4/12/01 | Taylor Rental | Power Washer | 27.35 | |
| 11/01/01 | Tradaq | Trade account | 561.69 | |
| 3/16/01 | WHAD | Legal | 1782.50 | |

**VENDER TOTALS: $ 53,869.79**

**ACCOUNTS PAYABLE - WAGNER CHARTER COMPANY** prepared 8/22/01

| **Venders and Suppliers:** | | **Total due** | |
|---|---|---|---|
| Ability Fire Equipment | | 719.27 | |
| Airborn Express | (Delivery) | 58.58 | |
| Ameritech | Phone & Y.P. | 14171.48 | |
| Anchors Away | Commissions | ?????? | |
| Barclay | R & M | 16.23 | |
| Bussean | Past due | 992.90 | |
| Cell Matt | Cell Phone | 188.48 | |
| Chicago Parent | Advertising | 1916.00 | |
| Chicago Tribune | Help wanted | 822.50 | |
| Chicago Tribune | Canceled cruise | 1550.00 | |
| Cohen, David | Legal | 2500.00 | (estimated) |
| Corky's Catering | Catering | 2000.00 | (bill 3671.87, will settle for 2K) |
| Cooling Equipment | J A.C. | 857.79 | |
| Cosmopolitan Textiles | Linen Rental | 558.58 | |
| DeNormandy | Linnen rental | 1039.19 | |
| Design Associated | Drydock Drawings | 56.01 | |
| Dominics | Food | 153.72 | |
| Drivers Licence Guide Co | | 24.95 | |
| Drug Testing | | 716.25 | |
| Dukes Oil | Waste oil | 2011.25 | |
| Fed Ex | Delivery | 250.02 | |
| Get Away With Murder | Cruise | 622.00 | |
| Grainger | R & M | 247.03 | |
| Home Depo | Repair and maint. | 1265.54 | |
| Hunt Leithner | Drydock | 5236.50 | |
| Illinois Trade | Various | 301.50 | |
| Independant Marine | Drydock | 350.00 | |
| J.C. Licht | Drydock | 1227.73 | |
| Key Art | Dir. Of Op Ad | 145.00 | |
| Lee & Eddies | Catering | 1712.20 | |
| Manning and Silverman | Accounting | 1700.00 | |
| MDS | Long distance | 787.70 | |
| Office Max | Office Supplies | 249.19 | |
| PACC | Equip rental | 450.93 | |
| Pirate Adventure Cruise | Refund | 384.00 | |
| Pitney Bowes | supplies | 62.26 | |
| Risso | Cancelled cruise | 800.00 | |
| SK Assoc. | Finantial | 4694.26 | |
| Sharp Well Drill | Dry Dock | 290.00 | |
| Sparkling Spring | Bottled water | 117.72 | |
| Sun - Times | Help Wanted | 780.00 | |
| Svanel | Pop | 597.22 | |
| Tandem | Laborers (2 wks) | 9045.88 | |
| Taylor Rental | Power Washer | 27.35 | |
| Tradaq | Trade account | 650.15 | |
| Union Beverage | Liquore | 1158.16 | |
| Wear Guard | Shirts | 521.41 | |
| WHAD | Legal | 1782.50 | |
| **VENDER TOTALS:** | | **$65,825.66** | |

## ACCOUNTS PAYABLE - WAGNER CHARTER COMPANY

prepared 8/30/01

| Venders and Suppliers: | | Total due | Paid by WCCI | WCL expense |
|---|---|---|---|---|
| Ability Fire Equipment | | 719.27 | | |
| Airborn Express | (Delivery) | 58.58 | | |
| Allpower Sewer | Pump out | 640.00 | | |
| Ameritech | Phone & Y.P. | 14171.48 | | |
| Barclay | R & M | 16.23 | | |
| Bussean | Past due | | 992.90 | |
| Cell Mart | Cell Phone | 188.48 | | |
| Chicago Parent | Advertising | 1916.00 | | |
| Chicago Tribune | Help wanted | 822.50 | | |
| Chicago Tribune | Canceled cruise | | 1550.00 | |
| Cohen, David | Legal | | 2500.00 | (estimated) |
| Corky's Catering | Catering | 2000.00 | (bill 3671.87, will settle for 2K) | |
| Cooling Equipment | J A.C. | 857.79 | | |
| Cosmopolitan Textiles | Linen Rental | 558.58 | | |
| DeNormandy | Linnen rental | 1039.19 | | |
| Design Associats | Drydock Drawings | 56.01 | | |
| Dominics | Food | 153.72 | | |
| Drivers Licence Guide Co | | 24.95 | | |
| Drug Testing | | 1002.75 | | |
| Dukes Oil | Waste oil | 2011.25 | | |
| Fed Ex | Delivery | 250.02 | | |
| IF Insurance Funding | Monthly boat | | | 2779.00 |
| Get Away With Murder | Cruise | | 622.00 | |
| Grainger | R & M | 247.03 | | |
| Home Depo | Repair and maint. | 1265.54 | | |
| Hunt Leithner | Drydock | 5236.50 | | |
| Illinois Trade | Various | | 301.50 | |
| Independant Marine | Drydock | 350.00 | | |
| J.C. Licht | Drydock | 1227.73 | | |
| Key Art | Dir. Of Op Ad | 145.00 | | |
| Lee & Eddies | Catering | | 1712.20 | |
| Manning and Silverman | Accounting | | 1700.00 | |
| MCI | Unknown | 34.14 | | |
| MOS | Long distance | 1007.75 | | |
| Office Max | Office Supplies | 249.19 | | |
| PBCC | Equip rental | 450.93 | | |
| Pirate Adventure Cruise | Refund | 384.00 | | |
| Pitney Bowes | supplies | 62.26 | | |
| Russo | Cancelled cruise | 800.00 | | |
| S.K. Assoc. | Finantial | | 4694.26 | |
| Sharp Well Drill | Dry Dock | 290.00 | | |
| Sparkling Spring | Bottled water | 117.72 | | |
| Sun - Times | Help Wanted | 780.00 | | |
| Swanel | Pop | 1435.71 | | |

| | | | | |
|---|---|---|---|---|
| Tandem | Laborers (2 wks) | 9045.88 | | |
| Taylor Rental | Power Washer | 27.35 | | |
| Tradaq | Trade account | | 650.15 | |
| Union Beverage | Liquore | 1594.94 | | |
| Wear Guard | Shirts | 521.41 | | |
| WHAD | Legal | 1782.50 | | |
| XO | Web site | | | 24.95 |
| XO | DSL | | | 100.00 |
| TOTALS: | | $53,542.38 | 14,673.01 | |

**ADDENDUM TO SALES CONTRACT BETWEEN WAGNER CHARTER COMPANY, INC ("SELLER") WAGNER CRUISES LTD AND A. PAUL KNOTT(COLLECTIVELY THE "BUYER")**

The following changes and/ or additions to the sales contract are agreed to by the buyer and the seller.

The buyer agrees to pay off the balance of the purchase price of $450,000.00, minus agreed to offsets, by March 1st, 2002.

The buyer agrees to accept full responsibility for existing Wagner Charter Company Inc contracts.

The seller agrees to pay the buyer any FINAL BALANCE ONLY due for cruises occurring on or after 8/28/01, that are received by Wagner Charter Company, Inc prior to closing. These will be paid at closing in a combination of Wagner Charter Company Inc check, undeposited customer checks and unprocessed credit card information. Buyer agrees that seller will retain all other funds received before closing.

The buyer and seller agree that the buyers offset for Docking at IBM is $1262.50, at Burnham Harbor is $ 10,000.00 and the offset for the buccaneers charter license is $1800.00.

The buyer and seller agree to eliminate the $10,000.00 offset for any unknown pre-existing condition.

The buyer and seller agree that in exchange for the $350.00 bar bank and $300.00 petty cash account held by employees, and liquor, beer, soda and dry goods inventory, the buyer will pay Wagner Charter Company Inc payroll beginning August 26,2001.

The buyer and seller agree that the buyer may offset $ 7745.70 in commissions due from Wagner Charter Company, Inc to Anchors Aweigh.

The buyer agrees to pay Wagner Charter Company Inc at closing: $55,403.86 for North Community Bank Loans: $26,910.25 for reimbursement of dry dock expenses: $30,677.26 for Richard Kingma loans; $20,812.47 for Jerry Barr loans.

The Seller agrees to pay the buyer at closing, $36,117.03 or the actual amount of final balances received before closing, whichever is greater.

[signature] 8/27/01
Daren Wagner /
Wagner Charter Company Inc
President Wagner Charter

[signature]
A. Paul Knott /
Wagner Cruises Ltd
8-27-01

PLAINTIFF'S EXHIBIT B

# CONSULTING AGREEMENT

This Consulting Agreement ("Agreement") is entered into on this 5 day of July, 2001, between A. Paul Knott, Jr. ("Knott"), Wagner Cruises Ltd. ("Cruises"), and Daren Wagner ("Wagner").

WHEREAS, Wagner currently is employed by Wagner Charter Company;

WHEREAS, Cruises, which owns and operates several charter boats, is in the process of acquiring additional charter boats;

WHEREAS, Wagner has unique skills, knowledge and expertise valuable to the Cruises and Knott's existing operation and future expansion plans;

WHEREAS, Cruises and Knott desire to hire Wagner to, among other things, to provide advise on the operation of the financial, operational, sales, marketing and bookkeeping end of its various charters both for its existing operation an future expansion;

Now THEREFORE, in consideration of the mutual agreements contained herein, the parties agree as follows:

1. Term:

The term of Wagner's consulting contract will begin July 10, 2001 and end December 31, 2004.

2. Position and Duties

Effective July 10, 2001, Wagner will become a consultant with Cruises and Knott. In such capacity, Wagner's principle duties will include:

a. Advising Cruises and Knott with design, layout and equipment purchasing for Cruises.

b. Advising Cruises and Knott with efficiencies of the support staff.

c. Advising Cruises and Knott with sales and marketing plans.

d. Advising Cruises and Knott with the operational aspects of charters.

e. To be available at the request of Cruises' Senior Vice President, President or Chairman, or Knott to advise regarding future development of the companies business.

3. Work Location

Wagner may consult from her home, and will be reasonably available via phone and fax. Wagner will not be required to be on site, either vessel or office, more than 8 hours per month.

4. Reporting Structure

With regards to all of her duties and responsibilities at Cruises and Knott, Wagner will report to A. Paul Knott, Jr.

5. Compensation

For the services under this agreement Cruises and Knott agree to pay Wagner $350,000.00. Wagner has agreed to finance this amount over ten years. Monthly payments of $11,000.00, principal and interest will be paid on the first of each month August through November for the year 2001. Monthly payments of $11,000.00, principal and interest will be paid on the first of each month June through October for the years 2002 through 2010. A final payment of $11,000.00 will be made June 1, 2011.

Wagner will be responsible for all taxes.

Wagner will not be entitled to any other compensation such as vacation pay, sick pay, medical benefits, etc.

6. Termination

Cruises and Knott may immediately terminate Wagner's employment only if termination is for legally proven "cause". "Cause" as used herein shall only include the following:

a. Theft by Wagner of Cruises funds or property; or

b. Entering into a similar Consulting Agreement with a competitive charter boat company operating vessels in Cook County, Illinois.

7. Prohibited Outside Activities

While under the terms of this consulting agreement through December 31, 2004, Wagner is not permitted to hold consulting agreements with competitive companies as described in Paragraph 6.b. that represent a conflict of interest.

8. Permitted Outside Activities

While contracted as a consultant for Cruises:

a. Wagner may act as a sales agent for her own charter brokerage company;

b. Wagner may hold a sales position for an outside charter company; and

c. Wagner may accept a strictly non upper-management, non-consulting position with a competitor of Cruises.

9. Security

As security for the payment of any sums due and owing pursuant to paragraph 5 of this Agreement, Cruises grants Wagner a security interest on all assets of Wagner Cruises Ltd., subject only to liens allowed in the sales contract between Wagner Cruises Ltd., A. Paul Knott, Jr. and Wagner Charter Co., Inc. Cruises and Knott will execute all documents necessary to perfect the security agreement in Cruises assets.

10. Default

If Cruises and/or Knott default on the payment of any sums due and owing pursuant to Paragraph 5 of this Agreement, and such default remains uncured after five business days, Wagner may accelerate all payments due and owing under this Agreement. Cruises and Knott agree to submit to the jurisdiction of the Circuit Court of Cook County, Illinois and waive any and all right to a trial by jury. Cruises and Knott waive any and all defenses to any lawsuit filed as a result of the breach of this Agreement by Cruises and Knott. Cruises and Knott agree to pay all reasonable costs and expenses of collection including reasonable attorney's fees.

11. Severability

If any particular portion of this Agreement is adjudicated to be unenforceable, that portion shall be deemed deleted without affecting the validity or enforcement of any other portion or provision hereof.

12. Notices

All notices including notice of termination by either party may be delivered in person or by certified mail to the last know post office address of that person.

13. Entire Agreement; Modifications

This agreement constitutes the entire agreement between Wagner, Cruises and Knott and shall not be altered or amended except by written agreement between the parties. This Agreement supersedes all prior consulting agreements, if any, whether oral or written, between the parties.

[signature]
DAREN WAGNER

[signature]
A. PAUL KNOTT, JR.

DBA Wagner Cruises LTD

WAGNER CRUISES LTD. DBA

By: ______________________
Its President

8-27-01



PLAINTIFF'S
EXHIBIT
C

# NON-COMPETE AGREEMENT

This Non-Compete Agreement ("Agreement") is entered into on this 5 day of July, 2001, between A. Paul Knott, Jr.("Knott:), Wagner Cruises Ltd. ("Cruises"), and Daren Wagner ("Wagner").

WHEREAS, Wagner currently is employed by Wagner Charter Co., Inc. ("WCCI");

WHEREAS, WCCI is in the process of selling its assets to the Cruises.

WHEREAS, Wagner has unique skills, knowledge and expertise separate from the assets being purchased by Cruises;

WHEREAS, Cruises and Knott desire that Wagner not share these skills, her customer knowledge or expertise in a way that would significantly diminish the value of the assets being purchased by the Cruises;

Now THEREFORE, in consideration of the mutual agreements contained herein, the parties agree as follows:

1. Term:

The term of Wagner's Agreement will begin July 10, 2001 and end on December 31, 2004.

2. Prohibited Activities:

From the effective date of this Agreement through December 31, 2004:

a. Wagner is not permitted to own or operate in an upper management position any vessels competitive with any charter vessel owned by Wagner Cruises Ltd.;

b. Wagner may not act as a consultant in any marketing or management position with a competitive cruise charter company; and

c. Wagner is not permitted to share, sell, use, solicit from or in any way disseminate the 2000 through 2001 customer lists of WCCI.

3. Permitted Outside Activities:

a. Wagner may act as a sales agent for her own charter brokerage company;

b. Wagner may hold a sales position for an outside charter company; and

c. Wagner may accept a strictly non upper-management, non-consulting position with a competitor of Cruises.

4. Compensation:

In exchange for the restrictions placed on Wagner's future business activities and consequential protection of the current and future assets of Cruises under this Agreement, Cruises and Knott agree to pay Wagner $350,000.00. Wagner has agreed to finance this amount over ten years. Monthly payments of $11,000.00, principal and interest will be paid on the first of each month August through November for the year 2001. Monthly payments of $11,000.00, principal and interest will be paid on the first of each month June through October for the years 2002 through 2010. A final payment of $9,960.00 will be made June 1, 2011.

Wagner will be responsible for all taxes.

Wagner will not be entitled to any other compensation such as vacation pay, sick pay, medical benefits, etc.

5.    Security:

As Security for the payment of any sums due and owing pursuant to paragraph 4 of this Agreement, Cruises and A. Paul Knott grant Wagner a security interest on all assets of Wagner Cruises Ltd, subject only to liens allowed in the sales contract between Wagner Cruises Ltd., A. Paul Knott, Jr. and Wagner Charter Co., Inc. Cruises and Knott will execute all documents necessary to perfect the security agreement in Cruises assets.

6.    Default:

If Cruises and/or Knott default on the payment of any sums due and owing pursuant to Paragraph 4 of this Agreement, and such default remains uncured after five business days, Wagner may accelerate all payments due and owing under this Agreement. Cruises and Knott agree to submit to the jurisdiction of the Circuit Court of Cook County, Illinois and waive any and all right to a trial by jury. Cruises and Knott waive any and all defenses to any lawsuit filed as a result of the breach of this Agreement by Cruises and Knott. Cruises and Knott agree to pay all reasonable costs and expenses of collection including reasonable attorney's fees.

7.    Severability:

If any particular portion of this Agreement is adjudicated to be unenforceable, that portion shall be deemed deleted without affecting the validity or enforcement of any other portion or provision hereof.

8.    Notices:

All notices including notice of termination by either party may be delivered in person or by certified mail to the last known post office address of that person.

FROM: DAVID E. COHEN TO: DAREN WAGNER

9. Entire Agreement; Modifications:

This Agreement constitutes the entire agreement between Wagner, Knott and Cruises and shall not be altered or amended except by written agreement between the parties. This Agreement supersedes all prior non-compete agreements, if any, whether oral or written, between the parties.

DAREN WAGNER

A. PAUL KNOTT, JR.

WAGNER CRUISES LTD.

By: Its President

3

**ADDENDUM TO NON COMPETE AND CONSULTING CONTRACTS BETWEEN DAREN WAGNER AND A. PAUL KNOTT JR AND WAGNER CRUISES LTD.**

Daren Wagner agrees to allow A. Paul Knott 30 days grace for each payment due to her during 2001 only.

A. Paul Knott and Wagner Cruises agree to provide a check for the first payment due on each contract, totaling $22,000.00 at closing on 8/28/01.

Daren Wagner

A. Paul Knott

Wagner Cruises Ltd

8/27/01

Post-it® Fax Note 7671

| | | | |
|---|---|---|---|
| To David Cohen | | Date 8/27/01 | # of pages ▶ 2 |
| Co./Dept. | | From Daren Wagner | |
| | | Co. WCC | |
| Phone # | | Phone # 630-673-8690 | |
| Fax # 312-666-0017 | | Fax # | |

Date August 28, 2001

Wagner Cruises, Ltd. and A. Paul Knott, in consideration of Wagner Charter Co., Inc. paying Wagner Cruises, Ltd. $15,390.48 less ~~com~~ credit card commissions, ~~and~~ agree to reimburse Wagner Charter Co., Inc. for any credit card charges charged back to Wagner Charter Co., Inc. for deposits or payment of cruises transferred to Wagner Cruises, Ltd. but ~~process~~ the credit card charge was processed by Wagner Charter Co., Inc.

Wagner Cruises, Ltd. shall also reimburse Wagner Charter Co., Inc. for all liquor purchases after today's date by Wagner Charter Co., Inc.

by: ______________________
Its President

Wagner Cruises, Ltd.

by: ______________________
Its President

______________________
A. Paul Knott



PLAINTIFF'S
EXHIBIT
D

# SECURITY AGREEMENT

**NAME OF DEBTOR :** **WAGNER CRUISES, LTD.** (the "Debtor")

**DEBTOR'S ADDRESS:** 800 South Wells Street, Suite 532, Chicago, Illinois 60607-2073

**GRANT OF SECURITY INTEREST:** The Debtor grants to Wagner Charter Co., Inc., the secured party, referred to as "Lender", whose address is 2N076 Linda Avenue, Wheaton, Illinois 60188 a continuing security interest in the Collateral listed below, to secure the payment and performance of all of Debtor's debt (the "Debt") to the Lender.

Debt shall include that certain Purchase Agreement dated July 5, 2001, each and every debt, liability and obligation of every type and description now owed or arising at a later time, whether direct or indirect, joint, several, or joint and several and whether or not of the same type or class as presently outstanding, which shall collectively be referred to as "Liabilities". Liabilities shall also include all interest, costs, expenses and reasonable attorneys' fees accruing to or incurred by the Lender in collecting the Liabilities or in the protection, maintenance or liquidation of the Collateral.

**DESCRIPTION OF COLLATERAL:** The Collateral covered by this agreement is all property of Debtor of any kind or description, tangible or intangible, whether now existing or hereafter acquired and wherever now or hereafter located, including, but not limited to, (i) cash, negotiable instruments, documents of title, chattel paper, securities, certificates of deposit, deposit accounts, interest or dividends thereon, other cash equivalents and all other property of whatever description of Debtor; and (ii) the following additional property of Debtor:

(a) All accounts, contract rights, instruments, documents, chattel paper, general intangibles (including, but not limited to choses in action, tax refunds, and insurance proceeds); and other obligations or indebtedness owed to Debtor from whatever source arising; all rights of Debtor to receive any payments in money or kind; all guaranties of the foregoing and security therefor; all of the right, title, and interest of Debtor in and relating thereto, and all rights of Debtor as an unpaid seller of goods and services, including, but not limited to, the rights of stoppage in transit, replevin, reclamation, and resale; and all of the foregoing, whether now owned or existing or hereafter created or acquired (collectively referred to as "Receivables");

(b) All goods, merchandise, and other personal property now owned or hereafter acquired by Debtor that are held for sale or lease, or are furnished or to be furnished under any contract of service or are raw materials, work-in-process, supplies, or material used or consumed in Debtor's business, and all products thereof, and all substitutions, replacements, additions, or accessions therefor and thereto; (collectively referred to as "Inventory");

(c) All machinery and equipment and furniture and fixtures, now owned or hereafter acquired by Debtor, and used or acquired for use in the business of Debtor together with all accessions thereto and all substitutions and replacements thereof and parts therefor;

(d) All vessels owned or hereafter acquired by Debtor, including all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment, radar, sonar, navigational devices and supplies, and all fishing and other appurtenances and accessories and additions, improvements and replacements whether on board or removed; and

(e) All cash or non-cash proceeds and products of any of the foregoing, including insurance proceeds; and

(f) All ledger sheets, files, records, documents, and instruments (including, but not limited to, computer programs, tapes, and related electronic data processing software) evidencing an interest in or relating to the above.

All of the aforesaid personal property and the products and proceeds thereof are herein individually and collectively called the "Collateral".

**WARRANTY & COVENANTS:** The Debtor warrants and covenants to the Lender that:

1. It will pay the Liabilities to the Lender secured by this agreement;
2. It is the owner of the Collateral free from any liens, encumbrances or security interests, except for this security interest, the lien of South Bank and existing liens disclosed to and accepted by Lender in writing and will defend the Collateral against all claims and demands of all persons at any time claiming any interest in it;
3. It will keep the Collateral free of liens, encumbrances and other security interests, except for this security interest, maintain it in good repair, not use it illegally and exhibit it to Lender on demand;
4. It will not sell or offer to sell or otherwise transfer the Collateral, or change the location of the Collateral, without the written consent of the Lender, except in the ordinary course of business;
5. It will pay promptly when due all taxes and assessments upon the Collateral or for its use or operation;
6. No financing statement covering all or any part of the Collateral or any proceeds is on file in any public office, unless the Lender has approved that filing. At Lender's request, the Debtor will execute one or more financing statements in form satisfactory to the Lender and will pay the cost of filing them in all public offices whose filing is deemed by Lender to be necessary or desirable;
7. It will immediately notify the Lender in writing of any name change or any change in business organization;
8. It will provide any information that the Lender may reasonably request and will permit the Lender, upon prior or notice, to inspect and copy its books and records during normal business hours.

**REPRESENTATIONS BY DEBTOR**: Debtor represents that the execution and delivery of this agreement and the performance of the obligations it imposes does not violate any law, does not conflict with any agreement by which he are bound, does not require the consent or approval of any government authority or any third party, and that this agreement is a valid and binding agreement, enforceable according to its terms.

**EVENTS OF DEFAULT**: The Debtor shall be in default upon the occurrence of any of the following: (1) The Debtor fails to pay when due any amount payable under any agreement or instrument evidencing debt to any creditor; (2) The Debtor (a) fails to observe or perform any term of this agreement; or (b) makes any materially incorrect or misleading representation, warranty, or certificate to the Lender; or (c) makes any materially incorrect or misleading representation in any financial statement or other information delivered to the Lender;, or (d) defaults under the terms of any agreement or instrument relating to any debt for borrowed money such that the creditor declares the debt due before its maturity; (3) The Debtor defaults under the terms of any loan agreement, mortgage, security agreement, or any other document executed as part of the Liabilities, or any guaranty of the Liabilities becomes unenforceable in whole or in part, or any guarantor of the Liabilities fails to promptly perform under its guaranty; (4) A "reportable event" (as defined in the Employee Retirement Income Security Act of 1974, as amended) occurs that would permit the Pension Benefit Guaranty Corporation to terminate any employee benefit plan of the Debtor or any affiliate of the Debtor; (5) The Debtor becomes insolvent or unable to pay its debts as they become due; (6) The Debtor (a) makes an assignment for the benefit of creditors; (b) consents to the appointment of a custodian, receiver, or trustee for itself or for a substantial part of its assets; or (c) commences any proceeding under any Bankruptcy, reorganization. liquidation, insolvency or similar laws of any jurisdiction; (7) A custodian, receiver or trustee is appointed for the Debtor or for a substantial part of its assets without the consent of the Debtor and is not removed within 60 days after the appointment; (8) Proceedings are commenced against the Debtor under any Bankruptcy, reorganization, liquidation, or similar laws of any jurisdiction and those proceedings remain undismissed for 60 days after commencement; or the Debtor consents to the commencement of such proceedings; (9) Any judgment is entered against the Debtor or any attachment, levy, or garnishment is issued against any property of the Debtor or the Debtor; (10) The Debtor, without the Lender's written consent (a) is dissolved, (b) merges or consolidates with any third party, (c) sells a material part of its assets or business outside the ordinary course of it business, or (d) agrees to do any of the foregoing; (11) There is a substantial change in the existing or prospective financial conditions of the Debtor or the Debtor which the Lender in good faith determines to be materially adverse; (12) The Lender in good faith deems itself insecure.

Upon default, the Lender shall have the rights and remedies provided by law or this agreement, including but not limited to the right to require the Debtor to assemble the Collateral and make it available to the Lender at a place to be designated by the Lender which is reasonably convenient to both parties, the right to take possession of the Collateral with or without demand and with or without process of law, and the right to sell and dispose of it and distribute the proceeds according to law. In connection with the right of the Lender to take possession of the Collateral, the Lender may take possession of any other items of property in or on the Collateral at the time of taking possession, and hold them for the Debtor without liability on the part of the Lender. If there is any statutory

requirement for notice, that requirement shall he met if the Lender sends notice to the Debtor at least seven (7) days prior to the date of sale, disposition or other event giving rise to the required notice. The Debtor shall be liable for any deficiency remaining after disposition of the Collateral.

MISCELLANEOUS: (1) No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver, no single or partial exercise by Lender of any right or remedy shall preclude any other exercise of it or the exercise of any other right or remedy, and no waiver or indulgence by the Lender of any default shall be effective unless in writing and signed by Lender, not shall a waiver on one occasion be construed as a waiver of that right on any future occasion. (2) If any provision of this agreement is invalid, it shall be ineffective only to the extent of its invalidity, and the remaining provisions shall be valid and effective. (3) Notice from one party to another relating to this agreement shall be deemed effective if made in writing (including telecommunications) and delivered to the recipient's address set forth above, telex number or facsimile number appearing on the records of the Lender by any of the following means: (a) hand delivery, (b) registered or certified mail, postage prepaid, with return receipt requested, (c) first class or express mail, postage prepaid, (d) Federal Express or like overnight courier service or (e) facsimile, telex or other wire transmission with request for assurance of receipt in a manner typical with respect to communications of that type. Notice made in accordance with this section shall be deemed delivered on receipt if delivered by hand or wire transmission, on the third business day after mailing if mailed by registered. or certified mail, or on the next business day after mailing or deposit with an overnight courier service if delivered by express mail or Overnight courier. (4) All rights of Lender shall inure to the benefit of the Lender's successors and assigns; and all obligations of the Debtor shall bind the Debtor' heirs, executors, administrators, successors and assigns. If there is more than one Debtor, his obligations are joint and several. (5) A carbon, photographic or other reproduction of this agreement is sufficient, and can be filled as a financing statement. The Lender is irrevocably appointed the Debtor' attorney in fact to execute any financing statement on Debtor' behalf covering the Collateral and Debtor specifically authorizes Lender to file a financing statement under revised Article 9 of the Uniform Commercial Code. (6) Illinois law shall govern the terms and provisions of this security agreement.

WAIVER OF JURY TRIAL: The Lender and the Debtor, after consulting or having had the opportunity to consult with counsel, knowingly voluntarily and intentionally waive any right either of them may have to a trial by jury in any litigation based upon or arising out of this agreement or any related instrument or agreement, or any of the transactions contemplated by this agreement or any course of conduct, dealing, statements (whether oral or written), or actions of either of them. Neither the Lender nor the Debtor shall seek to consolidate, by counterclaim or otherwise, any action in which a jury trial has been waived with any other action in which a jury trial cannot be or has not been waived. These provisions shall not be deemed to have been modified in any respect or relinquished by either the Lender or the Debtor except by a written instrument executed by both of them.

Dated: August 28, 2001

**WAGNER CRUISES, LTD.**

By: ______________________
Its President





PLAINTIFF'S EXHIBIT
E

# SECURITY AGREEMENT

**NAME OF DEBTOR** : **WAGNER CRUISES, LTD.** (the "Debtor")

**DEBTOR'S ADDRESS:** 800 South Wells Street, Suite 532, Chicago, Illinois 60607-2073

**GRANT OF SECURITY INTEREST**: The Debtor grants to Daren L. Wagner, the secured party, referred to as "Lender", whose address is 2N076 Linda Avenue, Wheaton, Illinois 60188, a continuing security interest in the Collateral listed below, to secure the payment and performance of all of Debtor's debt (the "Debt") to the Lender.

Debt shall include that certain Consulting agreement and Non-Compete Agreement dated July 5, 2001, each and every debt, liability and obligation of every type and description now owed or arising at a later time, whether direct or indirect, joint, several, or joint and several and whether or not of the same type or class as presently outstanding, which shall collectively be referred to as "Liabilities". Liabilities shall also include all interest, costs, expenses and reasonable attorneys' fees accruing to or incurred by the Lender in collecting the Liabilities or in the protection, maintenance or liquidation of the Collateral.

**DESCRIPTION OF COLLATERAL**: The Collateral covered by this agreement is all property of Debtor of any kind or description, tangible or intangible, whether now existing or hereafter acquired and wherever now or hereafter located, including, but not limited to, (i) cash, negotiable instruments, documents of title, chattel paper, securities, certificates of deposit, deposit accounts, interest or dividends thereon, other cash equivalents and all other property of whatever description of Debtor; and (ii) the following additional property of Debtor:

(a) All accounts, contract rights, instruments, documents, chattel paper, general intangibles (including, but not limited to choses in action, tax refunds, and insurance proceeds); and other obligations or indebtedness owed to Debtor from whatever source arising; all rights of Debtor to receive any payments in money or kind; all guaranties of the foregoing and security therefor; all of the right, title, and interest of Debtor in and relating thereto, and all rights of Debtor as an unpaid seller of goods and services, including, but not limited to, the rights of stoppage in transit, replevin, reclamation, and resale; and all of the foregoing, whether now owned or existing or hereafter created or acquired (collectively referred to as "Receivables");

(b) All goods, merchandise, and other personal property now owned or hereafter acquired by Debtor that are held for sale or lease, or are furnished or to be furnished under any contract of service or are raw materials, work-in-process, supplies, or material used or consumed in Debtor's business, and all products thereof, and all substitutions, replacements, additions, or accessions therefor and thereto; (collectively referred to as "Inventory");

(c) All machinery and equipment and furniture and fixtures, now owned or hereafter acquired by Debtor, and used or acquired for use in the business of Debtor together with all accessions thereto and all substitutions and replacements thereof and parts therefor;

(d) All vessels owned or hereafter acquired by Debtor, including all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment, radar, sonar, navigational devices and supplies, and all fishing and other appurtenances and accessories and additions, improvements and replacements whether on board or removed; and

(e) All cash or non-cash proceeds and products of any of the foregoing, including insurance proceeds; and

(f) All ledger sheets, files, records, documents, and instruments (including, but not limited to, computer programs, tapes, and related electronic data processing software) evidencing an interest in or relating to the above.

All of the aforesaid personal property and the products and proceeds thereof are herein individually and collectively called the "Collateral".

**WARRANTY & COVENANTS:** The Debtor warrants and covenants to the Lender that:

1. It will pay the Liabilities to the Lender secured by this agreement;
2. It is the owner of the Collateral free from any liens, encumbrances or security interests, except for this security interest, the lien of South Bank, the lien of Wagner Charter Co., Inc. and existing liens disclosed to and accepted by Lender in writing and will defend the Collateral against all claims and demands of all persons at any time claiming any interest in it;
3. It will keep the Collateral free of liens, encumbrances and other security interests, except for this security interest, maintain it in good repair, not use it illegally and exhibit it to Lender on demand;
4. It will not sell or offer to sell or otherwise transfer the Collateral, or change the location of the Collateral, without the written consent of the Lender, except in the ordinary course of business;
5. It will pay promptly when due all taxes and assessments upon the Collateral or for its use or operation;
6. No financing statement covering all or any part of the Collateral or any proceeds is on file in any public office, unless the Lender has approved that filing. At Lender's request, the Debtor will execute one or more financing statements in form satisfactory to the Lender and will pay the cost of filing them in all public offices whose filing is deemed by Lender to be necessary or desirable;
7. It will immediately notify the Lender in writing of any name change or any change in business organization;
8. It will provide any information that the Lender may reasonably request and will permit the Lender, upon prior or notice, to inspect and copy its books and records during normal business hours.

**REPRESENTATIONS BY DEBTOR**: Debtor represents that the execution and delivery of this agreement and the performance of the obligations it imposes does not violate any law, does not conflict with any agreement by which he are bound, does not require the consent or approval of any government authority or any third party, and that this agreement is a valid and binding agreement, enforceable according to its terms.

**EVENTS OF DEFAULT**: The Debtor shall be in default upon the occurrence of any of the following: (1) The Debtor fails to pay when due any amount payable under any agreement or instrument evidencing debt to any creditor; (2) The Debtor (a) fails to observe or perform any term of this agreement; or (b) makes any materially incorrect or misleading representation, warranty, or certificate to the Lender; or (c) makes any materially incorrect or misleading representation in any financial statement or other information delivered to the Lender; or (d) defaults under the terms of any agreement or instrument relating to any debt for borrowed money such that the creditor declares the debt due before its maturity; (3) The Debtor defaults under the terms of any loan agreement, mortgage, security agreement, or any other document executed as part of the Liabilities, or any guaranty of the Liabilities becomes unenforceable in whole or in part, or any guarantor of the Liabilities fails to promptly perform under its guaranty; (4) A "reportable event" (as defined in the Employee Retirement Income Security Act of 1974, as amended) occurs that would permit the Pension Benefit Guaranty Corporation to terminate any employee benefit plan of the Debtor or any affiliate of the Debtor; (5) The Debtor becomes insolvent or unable to pay its debts as they become due; (6) The Debtor (a) makes an assignment for the benefit of creditors; (b) consents to the appointment of a custodian, receiver, or trustee for itself or for a substantial part of its assets; or (c) commences any proceeding under any Bankruptcy, reorganization. liquidation, insolvency or similar laws of any jurisdiction; (7) A custodian, receiver or trustee is appointed for the Debtor or for a substantial part of its assets without the consent of the Debtor and is not removed within 60 days after the appointment; (8) Proceedings are commenced against the Debtor under any Bankruptcy, reorganization, liquidation, or similar laws of any jurisdiction and those proceedings remain undismissed for 60 days after commencement; or the Debtor consents to the commencement of such proceedings; (9) Any judgment is entered against the Debtor or any attachment, levy, or garnishment is issued against any property of the Debtor or the Debtor; (10) The Debtor, without the Lender's written consent (a) is dissolved, (b) merges or consolidates with any third party, (c) sells a material part of its assets or business outside the ordinary course of it business, or (d) agrees to do any of the foregoing; (11) There is a substantial change in the existing or prospective financial conditions of the Debtor or the Debtor which the Lender in good faith determines to be materially adverse; (12) The Lender in good faith deems itself insecure.

Upon default, the Lender shall have the rights and remedies provided by law or this agreement, including but not limited to the right to require the Debtor to assemble the Collateral and make it available to the Lender at a place to be designated by the Lender which is reasonably convenient to both parties, the right to take possession of the Collateral with or without demand and with or without process of law, and the right to sell and dispose of it and distribute the proceeds according to law. In connection with the right of the Lender to take possession of the Collateral, the Lender may take possession of any other items of property in or on the Collateral at the time of taking possession, and hold them for the Debtor without liability on the part of the Lender. If there is any statutory

requirement for notice, that requirement shall he met if the Lender sends notice to the Debtor at least seven (7) days prior to the date of sale, disposition or other event giving rise to the required notice. The Debtor shall be liable for any deficiency remaining after disposition of the Collateral.

**MISCELLANEOUS**: (1) No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver, no single or partial exercise by Lender of any right or remedy shall preclude any other exercise of it or the exercise of any other right or remedy, and no waiver or indulgence by the Lender of any default shall be effective unless in writing and signed by Lender, not shall a waiver on one occasion be construed as a waiver of that right on any future occasion. (2) If any provision of this agreement is invalid, it shall be ineffective only to the extent of its invalidity, and the remaining provisions shall be valid and effective. (3) Notice from one party to another relating to this agreement shall be deemed effective if made in writing (including telecommunications) and delivered to the recipient's address set forth above, telex number or facsimile number appearing on the records of the Lender by any of the following means: (a) hand delivery, (b) registered or certified mail, postage prepaid, with return receipt requested, (c) first class or express mail, postage prepaid, (d) Federal Express or like overnight courier service or (e) facsimile, telex or other wire transmission with request for assurance of receipt in a manner typical with respect to communications of that type. Notice made in accordance with this section shall be deemed delivered on receipt if delivered by hand or wire transmission, on the third business day after mailing if mailed by registered. or certified mail, or on the next business day after mailing or deposit with an overnight courier service if delivered by express mail or Overnight courier. (4) All rights of Lender shall inure to the benefit of the Lender's successors and assigns; and all obligations of the Debtor shall bind the Debtor's heirs, executors, administrators, successors and assigns. If there is more than one Debtor, his obligations are joint and several. (5) A carbon, photographic or other reproduction of this agreement is sufficient, and can be filled as a financing statement. The Lender is irrevocably appointed the Debtor's attorney in fact to execute any financing statement on Debtor's behalf covering the Collateral and Debtor specifically authorizes Lender to file a financing statement under revised Article 9 of the Uniform Commercial Code. (6) Illinois law shall govern the terms and provisions of this security agreement.

**WAIVER OF JURY TRIAL**: The Lender and the Debtor, after consulting or having had the opportunity to consult with counsel, knowingly voluntarily and intentionally waive any right either of them may have to a trial by jury in any litigation based upon or arising out of this agreement or any related instrument or agreement, or any of the transactions contemplated by this agreement or any course of conduct, dealing, statements (whether oral or written), or actions of either of them. Neither the Lender nor the Debtor shall seek to consolidate, by counterclaim or otherwise, any action in which a jury trial has been waived with any other action in which a jury trial cannot be or has not been waived. These provisions shall not be deemed to have been modified in any respect or relinquished by either the Lender or the Debtor except by a written instrument executed by both of them.

Dated: August 28, 2001

**WAGNER CRUISES, LTD.**

By: ______________________
Its President



PLAINTIFF'S EXHIBIT F

# FIRST PREFERRED SHIP MORTGAGE

THIS Second Preferred Ship Mortgage (the "Mortgage"), made this 28th day of August, 2001 by **WAGNER CRUISES, LTD.**, with an address at 800 South Wells Street, Suite 532, Chicago, Illinois 60607-2073 ("Mortgagors"), in favor of **WAGNER CHARTER CO., INC.**, with an address at 2N076 Linda Avenue, Wheaton, Illinois 60188 and **DAREN L. WAGNER** with an address of 2N076 Linda Avenue, Wheaton, Illinois 60188 (collectively the "Mortgagee"). For purposes of filing and recording this Mortgage as required by Chapter 31321 of Title 46, United States Code, the total amount of the indebtedness secured by this Mortgage as of the date hereof (as well as the discharge amount) is $1,150,000.00 together with interest, expenses and fees, and performance of mortgage covenants.

W I T N E S S E T H:

WHEREAS, the Mortgagors are the sole owner of the whole of the vessel more fully described below, and the Mortgagors are justly indebted to Mortgagee and as security for the payment and performance of all other indebtedness, obligations and liabilities of Mortgagors to Mortgagee, howsoever created, arising or evidenced, and whether now existing or hereafter arising, (collectively referred to as the "Obligations"), Mortgagors have agreed to execute and deliver to Mortgagee this Mortgage. This Mortgage is given as equal security for all of the Obligations without preference or priority of any part of the Obligations by reason of priority of time or of the negotiation thereof or otherwise); and

Office of the OCMI-USCG __________ Received for record at __________ o'clock on ____________ [Date], and recorded in __________ [Book No.], [Instrument No.]
________________
[Signature]

NATIONAL VESSEL DOCUMENTATION CENTER
USCG
RECEIVED/FILED
05 SEP '01 11:05 AM
RECORDED: BOOK 01-46 PAGE 502
DOCUMENTATION OFFICER

# FIRST PREFERRED SHIP MORTGAGE

THIS Second Preferred Ship Mortgage (the "Mortgage"), made this 28th day of August, 2001 by **WAGNER CRUISES, LTD.**, with an address at 800 South Wells Street, Suite 532, Chicago, Illinois 60607-2073 ("Mortgagors"), in favor of **WAGNER CHARTER CO., INC.**, with an address at 2N076 Linda Avenue, Wheaton, Illinois 60188 and **DAREN L. WAGNER** with an address of 2N076 Linda Avenue, Wheaton, Illinois 60188 (collectively the "Mortgagee"). For purposes of filing and recording this Mortgage as required by Chapter 31321 of Title 46, United States Code, the total amount of the indebtedness secured by this Mortgage as of the date hereof (as well as the discharge amount) is $1,150,000.00 together with interest, expenses and fees, and performance of mortgage covenants.

W I T N E S S E T H:

WHEREAS, the Mortgagors are the sole owner of the whole of the vessel more fully described below, and the Mortgagors are justly indebted to Mortgagee and as security for the payment and performance of all other indebtedness, obligations and liabilities of Mortgagors to Mortgagee, howsoever created, arising or evidenced, and whether now existing or hereafter arising, (collectively referred to as the "Obligations"), Mortgagors have agreed to execute and deliver to Mortgagee this Mortgage. This Mortgage is given as equal security for all of the Obligations without preference or priority of any part of the Obligations by reason of priority of time or of the negotiation thereof or otherwise); and

Office of the OCMI-USCG ________ Received for record at ________ o'clock on __________ [Date], and recorded in ________ [Book No.], ____________ [Instrument No.]
________________________ [Signature]

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, receipt and sufficiency of which are hereby acknowledged, and to secure payment of said indebtedness and interest and other sums that may become due and the performance of all covenants, Mortgagors mortgages and conveys unto Mortgagee, its successors and assigns, the whole of the vessel named below and further described in the last Certificate of Documentation issued and identified as follows:

| Name of Vessel | Home Port | Official Number | Gross Tons | Net Tons | Place Issued | Date Issued |
|---|---|---|---|---|---|---|
| Jamaica | Chicago, IL | D507102 | 88.56 | 60 | Natl Vessel Doc Ctr. | 1/6/2000 |

together with all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment, radar, sonar, navigational devices and supplies, and all fishing and other appurtenances and accessories and additions, improvements and replacements whether on board or removed, all of which shall be included in the term "vessel", and said Documents being included by reference;

TO HAVE AND TO HOLD all and singular the described vessel unto Mortgagee, its successors and assigns, forever;

PROVIDED, HOWEVER, if Mortgagors, their successors or assigns shall perform and observe all and singular the terms, covenants and agreements hereof, then this Mortgage shall cease, otherwise to remain in full force and effect.

## ARTICLE I - COVENANTS OF MORTGAGORS

Mortgagors covenant and agree:

1. Mortgagors are and shall continue to be a citizen of the United States entitled to own and operate the vessel under its respective marine documents, which Mortgagors shall maintain in full force and effect; and all action necessary for the execution, delivery and validity of this Mortgage filed and of any note evidencing the

indebtedness has been duly taken. This Mortgage is given in good faith and with no intent to hinder or defraud any existing or future creditor of the Mortgagors or lien or of the vessel.

2. Mortgagors lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may be specified below and shall warrant and defend title to a possession of all and every part for the benefit of Mortgagee against all persons. Mortgagors shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of Mortgagors against Mortgagee and/or assignee any past or future transaction.

3. Mortgagors shall, at their own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation not exceeding the amount insured and, in the aggregate as to the vessel mortgaged, in at least the amount of the unpaid principal balance of this Mortgage, and shall maintain insurance to cover protection and indemnity risks, tower's liability risks if the vessel performs towage, employees' compensation and/or other risks and liabilities from time to time specified by Mortgagee. All insurance shall be taken out in the name of Mortgagors and of Mortgagee (but in the case of Mortgagee, without liability for premiums, calls or assessments) and shall by its terms be payable to Mortgagee for account of Mortgagee and Mortgagors as their respective interests may appear, and all policy forms, underwriters and amounts shall be subject to Mortgagee's approval. Mortgagors shall notify, and shall request underwriters to agree reasonably in advance to notify, Mortgagee of any cancellation of, or material change in, any insurance coverage. All policies, binders and cover notices shall be delivered to Mortgagee with evidence satisfactory to it that all premiums and other charges have been paid. Mortgagors shall maintain all such insurance unimpaired by any act, breach of warranty or otherwise. If Mortgagors fail to maintain such insurance or to make necessary repairs, Mortgagee may arrange for same at Mortgagors' expense, but without responsibility on Mortgagee's part to do so and without responsibility for the adequacy of insurance coverage or the collection of claims or the adequacy of repairs.

4. Mortgagors shall comply with, and shall not permit the vessel to be operated contrary to, any provision of the insurance policies covering the vessel or contrary to any provision of the laws, treaties, conventions, rules, regulations or orders of the United States, any stated and/or any other jurisdiction where operated. Mortgagors shall not without prior written consent of Mortgagee permit the vessel to venture outside the territorial waters of the United States or Gulf of Mexico, nor in any event abandon the vessel in any foreign port. Mortgagors shall do everything necessary to establish and maintain this Mortgage as a Second Preferred Mortgage pursuant to Chapter 31322 of Title 46, United States Code.

5. Neither the Mortgagors, Agent, Master nor any Charterer has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the vessel, in whole or in part, any lien other than to the Mortgagee or for crew's wages or salvage. This provision and paragraphs 6 and 9 of this Article II shall be included in any charter party with respect to the vessel.

6. Mortgagors and any Charterer shall place and keep prominently in the pilot house (if any), chart room or Master's cabin or elsewhere on the vessel any notice of this Mortgage, required by Mortgagee, and shall keep a proper copy with the ship's papers and exhibit them to all persons having business with the vessel, and to Mortgagee on demand.

7. Mortgagors shall pay, when due, all taxes, assessments, governmental charges, fines and penalties lawfully imposed and promptly discharge any and all liens upon the vessel. Mortgagors shall, at its own expense, at all times maintain the vessel in thorough repair and working order and shall make all proper renewals and replacements. Mortgagors shall, at its own expense, at all times maintain and preserve the vessel and all its equipment, outfit and appurtenances tight, staunch, strong, in good condition, working order and repair and in all respects seaworthy, and if classified by the American Bureau of Shipping or other classification society, will keep the vessel in such condition as to entitle it to such classification. Mortgagors shall notify Mortgagee of any casualty or damage to the vessel in an amount in excess of $10,000.00.

8. If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Mortgagors shall forthwith notify Mortgagee by telegram, confirmed by letter, and immediately get it released, and in any event within 15 days after such libel, attachment, detention, seizure, levy or taking into custody. If any lien or encumbrance, other than as permitted by paragraph 5

of this Article II, is claimed against the vessel, which would constitute a prior lien to this Mortgage or would adversely affect the value of Mortgagee's security, Mortgagee may, in its discretion, pay and discharge such lien or encumbrance.

9. Mortgagors and any Charter shall at all times afford Mortgagee complete opportunities to inspect the vessel and cargoes and papers, and to examine Mortgagors' or Charterer's related accounts and records; and shall certify from time to time, at such intervals as Mortgagee shall determine, that all wages and all other claims which might have given rise to a lien upon the vessel have been paid.

10. Mortgagors shall not, without the prior written consent of Mortgagee, sell or mortgage the vessel nor charter them except to persons and for uses lawful for an American vessel and then only provided said insurance be unaffected or adequately replaced; nor, if a corporation, merge, or consolidate with any other person, firm or corporation, or dissolve.

11. From time to time Mortgagors shall execute and deliver such other and further instruments and assurances as in the opinion of Mortgagee's counsel may be required to subject the vessel more effectually to its lien and to the payment of its indebtedness and for operation of the vessel as provided.

**ARTICLE II - DEFAULT**

1. In the event the vessel shall be arrested or detained by any officer of any court or by any other authority, Mortgagors authorizes Mortgagee, its officers, representatives and appointees, in the name of Mortgagors or of Mortgagee, to receive or take possession, and to defend any action and/or discharge any lien.

2. Each and every power or remedy given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or later existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee. No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default. In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and their earnings, who shall have full rights and powers to use and operate the vessel, and to obtain a decree ordering and directing their sale and disposition.

3. The net proceeds of (i) any judicial or other sale, and any lease, charter, management, operation or other use of the vessel by Mortgagee; (ii) any claim for damages; (iii) any judgment; and (iv) any insurance received by Mortgagee (except to the extent paid to Mortgagors or applied in payment of repairs or otherwise for Mortgagors' benefit) shall be applied as follows:

FIRST: To the payment of all attorneys' fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Mortgagors's default, with interest on all such amounts at the rate of 1 1/2% per month, and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed; and

SECOND: To the payment of all interest, to date of payment, on the indebtedness secured hereby and any or all other sums due, and as to any balance of such proceeds, to the payment next of any or all matured installments of principal and then of any or all unmatured installments of principal in the inverse order of their maturity.

Mortgagee shall be entitled to collect any deficiency from Mortgagors. Mortgagors shall be entitled to any surplus, subject to setoff in favor of Mortgage for any other indebtedness of Mortgagors.

4. All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other related purpose and all damages sustained by Mortgagee because of defaults, shall be repaid by Mortgagors on demand with interest of 1 1/2% per month; and until so paid shall be a debt due from Mortgagors to Mortgagee secured by the lien hereof.

Mortgagee shall not be obligated to make any such advances or expenditures, but if made, the Mortgagors is not relieved of any obligation.

## ARTICLE III - POSSESSION UNTIL DEFAULT

Until one or more of the Events of Default described, Mortgagors shall be permitted to retain actual possession and use of the vessel.

## ARTICLE IV - MISCELLANEOUS

1. All covenants and agreements of Mortgagors shall bind Mortgagors, its successors and assigns. Following any assignment by Mortgagee (any such assignment being hereby permitted), any reference to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the Mortgagors, "its" shall mean "their." In case any term or provision of this Mortgage shall be held to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other term or provision, and this Mortgage shall be construed as if such invalid or unenforceable term or provision was nonexistent.

2. Nothing in any promissory note evidencing the indebtedness secured or in any other agreement between the parties shall be deemed a waiver by Mortgagee of any of the benefits of Chapter 313 of Title 46, United States, unless such waiver is contained in a written agreement specifically stating it is the intention of the Mortgagee to waive such benefits.

3. The Mortgagee shall be entitled to a delinquency charge of 1 1/2% per month on the amount of any and all installments not paid when due. Mortgagors agrees to pay the indebtedness secured with interest as provided, and to perform and observe the further terms, covenants and agreements hereof, and to hold the vessel subject thereto.

IN WITNESS WHEREOF, on the day and year first above written, Mortgagors has caused this Mortgage to be executed in its name by its properly authorized officer.

WAGNER CRUISES, LTD.

By: [signature]
Its President

STATE OF ILLINOIS )
) SS.
COUNTY OF )

I, the undersigned, a Notary Public in and for said County in the state aforesaid, DO HEREBY CERTIFY THAT A. Paul Knott, Jr., President of Wagner Cruises, Ltd., is personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed and delivered said instrument as his own free and voluntary act of Wagner Cruises, Ltd. for the uses and purposes therein set forth.

GIVEN under my hand and Notarial Seal this 28th day of ~~July~~ August, A.D., 2001.

[signature]
NOTARY PUBLIC

My Commission Expires: 7/24/04

"OFFICIAL SEAL"
DAVID E. COHEN
Notary Public, State of Illinois
My Commission Expires 07/24/04