

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 5138 | DATE | 4/21/2003 |
| CASE TITLE | Daren L. Wagner vs. M/V Jamaica, etc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ____.
(3) ☐ Answer brief to motion due____. Reply to answer brief due____.
(4) ☐ Ruling/Hearing on ____ set for ____ at ____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ____ set for ____ at ____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ____ set for ____ at ____.
(7) ☐ Trial[set for/re-set for] on ____ at ____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ____ at ____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Order. There is no genuine issue of material fact, and each of Wagner Plaintiff is entitled to a judgment as a matter of law. Accordingly, as prayed in Wagner Plaintiffs' Rule 56 motion, it is hereby ordered that :1. Wagner Plaintiffs' preferred ship mortgage on the Vessel is foreclosed and judgment is ordered to be entered in favor of Wagner Plaintiffs and against the Vessel in rem and against Wagner Cruises in personam, jointly and severally, in the amount of $837,493.67 plus interest, costs and attorneys' fees, as provided for in the preferred ship mortgage. (28-1)
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | APR 25 2003 | |
| ✓ | Notices mailed by judge's staff. | | date docketed | 42 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | IS | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/22/2003 | |
| | | | date mailed notice | |
| SN | courtroom deputy's initials | | SN | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAREN L. WAGNER, an individual, )
et al., )
 )
             Plaintiffs, )
 )
v. )   No. 02 C 5138
 )
M/V JAMAICA, etc., et al., )
 )
             Defendants. )

## MEMORANDUM ORDER

In this admiralty action, brought by Daren Wagner ("Wagner") and Wagner Charter Co., Inc. ("Wagner Charter")--collectively "Wagner Plaintiffs"--against M/V Jamaica (the "Vessel"), A. Paul Knott, Jr. ("Knott") and Wagner Cruises, Ltd. ("Wagner Cruises"), the possible sale of the Vessel remains in an on-again, off-again posture because of uncertainty as to the ability to consummate a potential private sale to which the parties had stipulated at the end of January 2003.[1] In the meantime Wagner Plaintiffs have moved for summary judgment under Fed. R. Civ. P. ("Rule") 56 and, not to be outdone, Knott has not only responded but has brought his own Rule 56 motion.

Apart from their admiralty claim that seeks foreclosure of a

---

[1] That stipulation was certainly understandable, for a private sale would operate to everyone's advantage. Experience teaches that except in rare circumstances a public foreclosure sale generates fewer dollars than a negotiated private sale. And in this instance a lower sale price would diminish the funds that would be available to resolve the various claims at issue, thus requiring the losing parties to dip into their figurative pockets to a greater extent.



preferred ship mortgage affecting the Vessel (see 46 U.S.C. §31322), Wagner Plaintiffs assert claims under the supplemental jurisdiction auspices of 28 U.S.C. §1367(a). Those claims relate to three July 5, 2001 agreements that, as Wagner Plaintiffs would have it, are separate free-standing contracts to be evaluated in the same way as the interrelated contracts in Rosenblum v. Travelbyus.com, Ltd., 299 F.3d 657, 663 (7th Cir. 2002):

1. Purchase Agreement between Wagner Charter as the Seller and Wagner Cruises and Knott collectively as the Buyer;

2. Consulting Agreement between Knott and Wagner Cruises as the hiring parties and Wagner as the hired consultant; and

3. Non-compete Agreement between Knott and Wagner Cruises on the one hand and Wagner on the other, by which the latter is prohibited from engaging in various types of activity for a period ending December 31, 2004.

There is no disputing the existence of defaults under each of the several agreements. Nor have either the Vessel or Wagner Cruises responded to Wagner Plaintiffs' well-supported motion, so that judgment as a matter of law should clearly be entered against them. Only Knott seeks to avoid personal liability, but the analysis that follows reveals that those efforts must fail.

For one thing, Knott strives to argue that because the three

agreements at issue "were all part and parcel of the same purchase agreement and this defendant believes that they were separated for the sole purpose of Daren Wagner, of [sic--should presumably be "as"] one of the shareholders of plaintiff, to avoid payment of a substantial portion of the proceeds [to] the remaining shareholders" (Knott Facts ¶5, pointing to his affidavit. Rosenblum really scotches any such recharacterization of the three agreements as a single contract to begin with. But only a little added thought is needed to see that Knott's contention, which is really unsupported factually as well as legally, is not a basis for any complaint on his part in any event.

What seems to underpin Knott's approach in that respect is a mistaken notion that consideration for the agreements was somehow lacking. That is of course wrong under the universal principle of contract law under which the simple exchange of promises suffices for enforceability. And even if the entire transaction were impermissibly recast, in contravention of the contractual terms, as a $1.15 million purchase of the Vessel (instead of $450,000 under the Purchase Agreement, $350,000 under the Consulting Agreement and $350,000 under the Non-compete Agreement), the presence of the requisite consideration, the existence of default and the amount due upon the default would remain the same.

At its core, then, Knott's defense is one of the claimed absence of personal liability on his part on the premise that he was a non-party to the agreements. That was a position that Knott had sought to advance much earlier by filing a summary judgment motion on November 7, 2002. This Court rejected that motion out of hand on November 8, by ruling orally that the contention was totally at odds with various of the contractual provisions.

It is true that the standard on Wagner Plaintiffs' Rule 56 motion differs from that on Knott's earlier and present motions, in that on Wagner Plaintiffs' motion any reasonable inferences must be drawn in favor of nonmovant Knott (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But that provides Knott no comfort, for there are no genuine issues of material fact that would call for inference-drawing in any event.

Because each of the three agreements at issue involves slight differences in the factors that confirm Knott's personal liability, they call for separate discussion. But as will be seen, none requires extensive treatment.

### Purchase Agreement

As stated earlier, the introductory paragraph that identifies the parties expressly names both Wagner Cruises and Knott, labeling them collectively as "Buyer." Knott's argument that this was done because the corporation was not yet in

4

existence does not help him--if true, he necessarily had to be liable personally at the outset, because the absence of any party at all on the buying side would have caused the agreement to be devoid of meaning--of any prospect of enforceability. If the parties' mutual goal had been as Knott now claims, the often-used locution of an individual reciting that he or she is entering into an agreement "solely on behalf of a corporation to be formed" could have accomplished that asserted purpose of Knott's avoiding personal liability when the corporation came into existence later.

Here nothing of the sort was done. Instead the signature portion of the document also listed (and was signed by) Knott individually,[2] as well as his signing separately as President of Wagner Cruises (whether it was then in existence or yet to be formed). Nothing in the document suggests that Knott's original personal responsibility was to drop out at any future date, and he cannot so claim in the face of the document's integration clause (Purchase Agreement ¶15).[3]

---

[2] Knott handwrote "D/B/A Wagner Cruises, Ltd." beneath his individual signature--an insertion entirely consistent with the other contractual provisions connoting and denoting his personal liability, as discussed in the text.

[3] Another confirmatory fact, though perhaps minor in nature, is that Purchase Agreement ¶16, the provision for notices, not only listed Knott and Wagner Cruises separately but also contained a different address for each.

## Consulting Agreement

Again the opening paragraph of the document lists both Knott and Wagner Cruises as contracting parties. But even more damning to Knott's position is that every substantive provision of the agreement, as well as the "WHEREAS" recital (which says that "Cruises and Knott desire to hire Wagner"), refers to both Wagner Cruises and Knott, this time eschewing any collective term to refer to both. Consulting Agreement ¶5 expressly reads "Cruises and Knott agree to pay Wagner $350,000.00." And again Wagner signed individually, as well as signing separately on behalf of Wagner Cruises.

Moreover, the separate personal liability on the parts of Knott and the corporation is further rendered crystal clear by Consulting Agreement ¶10, which sets out the "Default" provisions agreed on by the parties. There too any potential ambiguity is eliminated by the opening clause:

> If Cruises and/or Knott default on the payment of any sums due and owing pursuant to Paragraph 5 of this Agreement....

And each of the other three sentences of that paragraph likewise spells out the undertakings and agreements of both "Cruises and Knott."[4]

---

[4] What has been said in this paragraph of the text is equally true of the Default provision in Non-compete Agreement ¶6. Accordingly the identical analysis further confirms Knotts' personal liability under that document.

6

### Non-compete Agreement

Here too Knott and Wagner Cruises are separately listed as parties. Again a WHEREAS clause expressly refers to what both Wagner Cruises _and_ Knott desire in terms of Wagner's promise of non-competition. Non-compete Agreement ¶4 also expressly reads "Cruises and Knott agree to pay Wagner $350,000.00." And as n.4 reflects, the Default provision in Non-compete Agreement ¶6 buttresses the same conclusion.

### Conclusion

As stated earlier, there is no genuine issue of material fact, and each of Wagner Plaintiffs is entitled to a judgment as a matter of law. Accordingly, as prayed in Wagner Plaintiffs' Rule 56 motion, it is hereby ordered that:

1. Wagner Plaintiffs' preferred ship mortgage on the Vessel is foreclosed, and judgment is ordered to be entered in favor of Wagner Plaintiffs and against the Vessel _in rem_ and against Wagner Cruises in personam, jointly and severally, in the amount of $837,493.67 plus interest, costs and attorneys' fees, as provided for in the preferred ship mortgage.

2. Judgment is ordered to be entered in favor of Wagner Charter and against Knott and Wagner Cruises, jointly and severally, in the amount of $159,493.67 plus interest, costs and attorneys' fees, as provided for in the Purchase

Agreement.

3. Judgment is ordered to be entered in favor of Wagner and against Knott and Wagner Cruises, jointly and severally, in the amount of $339,000 plus interest and costs and attorneys' fees, as provided for in the Consulting Agreement, and in the amount of $339,000 plus interest, costs and attorneys' fees, as provided for in the Non-compete Agreement.

4. Wagner Plaintiffs shall be allowed to submit a petition to this Court that calculates interest, costs (and expenses, if appropriate) and attorneys' fees as of the date of judgment, as provided for in the three agreements (as to attorneys' fees, see this District Court's LR 54.3). If Wagner Plaintiffs provides such a calculation as to interest and costs (and, if appropriate, as to expenses other than attorneys' fees), that can give rise to an enforceable final judgment without any need for a Rule 54(b) determination (see Budinich v. Becton Dickinson & Co., 486 U.S. 196 (1988)).

Milton I. Shadur
Senior United States District Judge

Date: April 21, 2003